[No. 70481-3.   En Banc.]
Argued June 12, 2001.    Decided January 17, 2002.

THE STATE OF WASHINGTON, *Respondent*, v. JOSHUA JAMES FOWLER, *Petitioner*.

MADSEN, JOHNSON, SANDERS, and CHAMBERS, JJ., dissent by separate opinion.

*Jason B. Saunders* (of *Washington Appellate Project*), for petitioner.

*Norm Maleng*, *Prosecuting Attorney*, and *William M. Berg*, *Deputy*, for respondent.

ALEXANDER, C.J. — We granted Joshua Fowler's petition to review a decision of the Court of Appeals in which that court reversed the sentencing court's imposition of a sentence below the standard range following Fowler's plea of guilty to a charge of first degree robbery. We conclude that the Court of Appeals did not err in reversing the exceptional sentence and, therefore, affirm that court, concluding, as it did, that Fowler should be resentenced within the standard range.

## I. FACTS

On October 30, 1997, Joshua Fowler joined his friends Donald Aho and Denise Sables at "Fast Freddy's Tavern" in Kent. Report of Proceedings (RP) (Apr. 29, 1999) at 32. Fowler, who had gone without sleep for three days while drinking alcohol and using methamphetamine, ingested additional alcohol and methamphetamine at the tavern.

At the instigation of Sables, Fowler departed the tavern with Sables and Aho and went with them to Ken Carroll's home. His purpose in going to Carroll's home was to collect

a debt he believed Carroll owed to him. Before entering Carroll's home, Fowler armed himself with a handgun and knife. Once inside the apartment, an argument ensued between Fowler and Carroll. This led to Fowler hitting Carroll in the head with the gun that Fowler was carrying. Carroll was then taken to a back bedroom where, after being bound by Aho, he was threatened and beaten by Fowler. As Fowler administered the beating, he told Carroll that he would "cut him" in order to "teach him a lesson." *Id.* at 9. Carroll's roommate, Thomas Gochanour, who had also been bound by Aho, was struck in the face by Fowler with the flat side of the knife that Fowler was carrying. Fowler also threatened to cut Gochanour's throat with the knife. After engaging in this activity, Fowler and his accomplices fled taking some videotapes, a cellular phone, a wallet, and some money from the apartment.

Eighteen months after the above-described incident, Fowler turned himself in to the police. He was thereafter charged with and pleaded guilty to first degree robbery.[1] At sentencing, the trial court determined that because Fowler had no prior criminal history, the standard sentencing range for the offense was 31 to 41 months, plus a mandatory 60-month firearm enhancement penalty. Fowler sought an exceptional sentence of six months, exclusive of the firearm enhancement, basing his request on what he claimed was the presence of three statutory mitigating factors. Although the trial court did not find any of those factors present, it, nevertheless, imposed a 15-month exceptional sentence based on its determination that Fowler: (1) had no history of violent behavior and no pertinent criminal history; (2) was experiencing symptoms of extreme sleep deprivation at the time of the offense; (3) exhibited behavior at the time of the offense that was aberrational and

---

[1] Of the three persons who went to Carroll's home Fowler was the only one to turn himself in to the authorities. Aho was, however, charged with first degree burglary and first degree robbery and pleaded guilty to those charges. He was given an exceptional sentence below the standard range after agreeing to testify against Fowler. Sables was charged with and pleaded guilty to second degree robbery.

represented an isolated incident of violence; (4) had strong family support; and (5) was a low to moderate risk to reoffend. The State appealed the sentence to the Court of Appeals, contending that the reasons given by the trial court did not support an exceptional sentence. The Court of Appeals agreed with the State and reversed the sentence, remanding for resentencing within the standard range. Fowler thereafter petitioned this court for review and we granted his petition.

## II. ANALYSIS

Fowler contends that the Court of Appeals erred in setting aside his exceptional sentence and directing the trial court to impose a sentence within the sentence range established in the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. He argues, in support of his contention, that the reasons relied on by the sentencing court "are substantial and compelling enough to justify the exceptional sentence." Pet. for Review at 10. The State responds that we should affirm the Court of Appeals, asserting that the reasons relied on by the trial court do not justify an exceptional sentence downward because they have already been taken into account in the computation of the presumptive range for the offense and/or do not distinguish the defendant's crime from others in the same category.

A court must generally impose a sentence within the standard sentence range. Former RCW 9.94A.120(1) (2000). It may, however, impose a sentence above or below the standard range for reasons that are "substantial and compelling." Former RCW 9.94A.120(2). The SRA contains a list of aggravating and mitigating factors "which the court may consider in the exercise of its discretion to impose an exceptional sentence." RCW 9.94A.390. Although this list is not exclusive, any such reasons must relate to the crime and make it more, or less, egregious. *State v. Akin*, 77 Wn. App. 575, 584, 892 P.2d 774 (1995).

In imposing a sentence below the standard range here, the sentencing court did not rely on any of the mitigating

factors listed in the statute. Instead it concluded that an exceptional sentence downward was justified by a combination of factors that were "not in and of themselves" grounds for an exceptional sentence.[2] Clerk's Papers (CP) at 51. Although, as noted above, the list of mitigating factors is not exclusive, any reasons that are relied on for deviating from the standard range must "distinguish the defendant's crime from others in the same category." *State v. Gaines*, 122 Wn.2d 502, 509, 859 P.2d 36 (1993) (citing *State v. Grewe*, 117 Wn.2d 211, 216, 813 P.2d 1238 (1991)). A sentencing court may not, in imposing an exceptional sentence, take into account the defendant's criminal history and the seriousness level of the offense because those are considered in computing the presumptive range for the offense. *See State v. Nordby*, 106 Wn.2d 514, 518 n.4, 723 P.2d 1117 (1986).

■ Appellate review of a sentence outside the standard range is governed by former RCW 9.94A.210(4) (2000). Under that statute, the appellate court is to engage in a three-part analysis. First, the court must determine if the record supports the reasons given by the sentencing court for imposing an exceptional sentence. As this is a factual inquiry, the trial court's reasons will be upheld unless they are clearly erroneous. *Nordby*, 106 Wn.2d at 517-18. The

---

[2] Fowler had argued that some of the statutory mitigating factors were present to justify downward departures from the standard sentencing range provided under RCW 9.94A.390(1):

"(a) To a significant degree, the victim was an initiator, willing participant, aggressor, or provoker of the incident.

". . . .

"(d) The defendant, with no apparent predisposition to do so, was induced by others to participate in the crime.

"(e) The defendant's capacity to appreciate the wrongfulness of his or her conduct, or to conform his or her conduct to the requirements of the law, was significantly impaired."

The trial court rejected this argument based on its finding that Fowler (1) failed to show that Carroll initiated the violent conduct; (2) voluntarily used a gun and perpetrated the attack on Carroll and Gochanour; and (3) failed to show that he lacked capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

appellate court must next determine, as a matter of law, whether the reasons given justify the imposition of an exceptional sentence. *Id.* at 518. The sentencing court's reasons must, as we observed above, be "substantial and compelling." Former RCW 9.94A.120(2). Finally, the court is to examine whether the sentence is clearly excessive or clearly lenient under the "abuse of discretion" standard. Former RCW 9.94A.210(4); *State v. Jeannotte,* 133 Wn.2d 847, 855-56, 947 P.2d 1192 (1997) (citing *State v. Allert,* 117 Wn.2d 156, 163, 815 P.2d 752 (1991)).

█ The first factor the sentencing court relied on in imposing an exceptional sentence was that the "defendant ha[d] no history of violent behavior and no pertinent criminal history." CP at 51. Although Fowler concedes that a defendant's lack of criminal history alone is an insufficient ground for a sentence below the standard range, he asserts that a clean record combined with a complete absence of police contacts may be a substantial and compelling reason for imposing an exceptional sentence.

This argument is without merit. Saying that the defendant had no history of violent behavior and no pertinent criminal history is essentially equivalent to saying that he has no criminal record. As we have noted, a lack of a criminal history is not a mitigating factor because criminal history is already encompassed in the sentencing guidelines.[3] *See State v. Pascal,* 108 Wn.2d 125, 736 P.2d 1065 (1987) (lack of criminal history already accounted for in standard range). The only exception to this general rule is that a lack of criminal history may be considered "in combination with the finding that the defendant was 'induced' to commit the crime" or lacked a predisposition to

---

[3] The trial court acknowledged that this was an accurate statement of the law. In fact, when the prosecutor argued that lack of prior criminal history could not be a basis for an exceptional sentence, the trial judge responded:

"[J]ust so the record is clear: In my point of view this is not based upon criminal history. I understand that the *Amin* [sic] case [*State v. Ha'mim,* 132 Wn.2d 834, 940 P.2d 633 (1997)]. I agree with the *Amin* [sic] case. This is more to do with the nature of the conduct than with the fact that Mr. Fowler has not been charged previously." RP (Apr. 30, 1999) at 40-41.

commit the crime. *State v. Ha'mim*, 132 Wn.2d 834, 842-43, 940 P.2d 633 (1997); *see State v. Nelson*, 108 Wn.2d 491, 740 P.2d 835 (1987); *State v. Baucham*, 76 Wn. App. 749, 887 P.2d 909 (1995). Here, the trial court rejected a finding that Fowler was either induced by others to commit the crime or that he lacked a predisposition to commit the crime. In that regard, the trial court stated:

> [I]t was his [Fowler's] choice to take [the gun] into the house. Even though Mr. Aho said let's go get the money, Mr. Aho did not say let's go beat up Carroll. I don't think Mr. Fowler did anything just for grins.

RP (Apr. 30, 1999) at 35-36. Because no such finding was made, the fact that he lacked a criminal record and was not violent in the past does not independently or in combination with other factors justify an exceptional sentence.

▮ The trial court also found that a downward exceptional sentence was justified on the basis that Fowler's behavior during the commission of the crime was aberrational and represented an isolated incident of violence. Specifically the trial court stated:

> I have absolutely no trouble believing the defendant when he said and his family said that the behavior that occurred on the night of this incident was an aberration. It was unusual. It was out of character for him. . . .
>
> I believe the defendant when he says that his behavior was fueled by some form of chemical imbalance, whether it was chronic depression I can't say. I certainly think there is every indication that it was fueled by sleep deprivation, ingestion of methamphetamines, ingestion of alcohol.

*Id.* at 33-34. The Court of Appeals rejected this reason as a basis for an exceptional sentence, agreeing with the State that the constituent elements of Fowler's aberrant behavior, "his absence of a record of violent or relevant criminal behavior—are encompassed in the standard range." *State v. Fowler*, No. 44725-4-I, slip op. at 7 (Wash. Ct. App. Oct. 30, 2000).

Fowler argues here that federal case law supports the proposition that aberrant behavior is a valid mitigating

factor. We agree with the Court of Appeals that it is not. The fact that a defendant's criminal conduct is exceptional or aberrant does not distinguish the defendant's crime from others in the same category. Furthermore, to say that conduct is an aberration is tantamount to saying that the defendant "has not done anything like this before." That, in our view, is yet another way of saying that the defendant has little or no history of criminal behavior. As we have noted, that is not a valid basis for an exceptional sentence under Washington's sentencing scheme because it has been taken into consideration in the establishment of the standard range. By contrast, under federal law, the fact the behavior is aberrational may be a valid mitigating factor because it has not been " 'adequately taken into consideration by the sentencing commission in formulating the guidelines.' " *Zecevic v. United States Parole Comm'n,* 163 F.3d 731, 734 (2d Cir. 1998) (quoting *United States v. Pena,* 930 F.2d 1486, 1494-95 (10th Cir. 1991)).

■ Even if we were inclined to follow the lead of the federal circuit courts that have recognized that aberrational behavior may justify a departure from the standard range, Fowler's conduct does not resemble the type of conduct that those courts have found to be aberrational. The act Fowler committed was not committed without forethought and planning, and thus fails the spontaneity test enunciated in cases cited by the dissent. *See United States v. Constantine,* 263 F.3d 1122, 1127 (10th Cir. 2001); *United States v. Rojas-Millan,* 234 F.3d 464, 475 n.7 (9th Cir. 2000); *Zecevic,* 163 F.3d at 735. Indeed, the record shows that Fowler's motivation in going to Ken Carroll's house was to collect a debt. To aid himself in that endeavor he armed himself with a handgun and knife, items that he subsequently used in the commission of the robbery. This was hardly a spontaneous act. Neither can it be said that any of the factors evidencing aberrational behavior under the "totality of circumstances" test, that the dissent identifies at pages 413-14 of its opinion, are present, i.e., that the

defendant suffered from a psychological disorder, that he was under external pressure, that his motivation was other than pecuniary gain, or that he took steps to mitigate the effects of his acts. In short, Fowler's conduct was not aberrational, even under the case law or federal guidelines cited by the dissent.[4]

■ Fowler also contends that the Court of Appeals erred in concluding that what the trial court described as his low to moderate risk to reoffend is not a substantial and compelling reason for imposing an exceptional sentence. Specifically, he argues that a low risk of reoffense is a valid factor when a court finds by clear and convincing evidence that a standard range disposition would be detrimental to the goal of rehabilitating the offender. The State counters that protection of the public has already been considered by the legislature in computing the presumptive sentencing range.

The sentencing court's finding that Fowler was a low to moderate risk to reoffend was based upon an evaluation and report of the Washington State Department of Corrections. In rejecting this reason for an exceptional sentence, the Court of Appeals indicated that "[i]t is well-established that the risk of reoffense is not a substantial and compelling reason for an exceptional sentence." *Fowler*, No. 44725-4-I, slip op. at 8 (citing *State v. Estrella*, 115 Wn.2d 350, 356, 798 P.2d 289 (1990); *Pascal*, 108 Wn.2d at 137). The observation of the Court of Appeals is correct, this court having previously determined that protection of the public has already been considered by the legislature in computing the presumptive sentencing range. *See Pascal*, 108 Wn.2d at 137.

---

[4] The dissent makes the point that "[o]rdinarily, when there is a new legal test adopted by this court, the court sends the matter back to the sentencing court rather than finding facts as the majority purports to do." Dissent at 415. Remand is unnecessary here because, as we have indicated above, we are not adopting a new test. Remand would be unnecessary in any case because the trial court made extensive findings of fact in support of the exceptional sentence it passed down and made no findings that can be said to support a finding of aberrant behavior even under federal case law or guidelines.

In imposing an exceptional sentence, the sentencing court also relied on its finding that "[a]t the time of the commission of the offense, the defendant had not slept in more than 48 hours and was experiencing symptoms of extreme sleep deprivation." CP at 51. Fowler contends that the Court of Appeals erred in rejecting this reason as support for an exceptional sentence, asserting that this is a factor not necessarily considered in computing the standard range. The State again disagrees with Fowler, indicating that the defendant's lack of sleep did not justify an exceptional sentence because there was no evidence that Fowler's sleep deprivation was unrelated to his ingestion of drugs.

At the sentencing hearing, Fowler blamed his conduct on sleep deprivation saying, "I think a big part of what happened that night was a major lack of sleep and Kenny [Carroll] calling me [names] and all that, and I just snapped. You know, it wasn't so much the drugs, it was a lack of sleep, calling me names, all that." RP (Apr. 30, 1999) at 24. Fowler conceded, however, that he had been taking methamphetamine and alcohol continuously for three days without any sleep. Indeed, the sentencing judge, while noting that Fowler had not slept for 48 hours and was experiencing extreme sleep deprivation, found that "all the evidence seems to say, is that he was strung out, actually that he had taken methamphetamines and hadn't slept for three days, had been drunk or drinking beer from 6:00 p.m. until the time of this incident at 2:00 o'clock the next morning." *Id.* at 35.

■ Voluntary ingestion of drugs and alcohol may not be considered as a mitigating factor. RCW 9.94A.390(1)(e). It follows that lack of sleep does not justify an exceptional sentence downward when such impairment is induced by drugs and alcohol. Fowler contends that the trial court did not enter a finding that his sleep deprivation was caused by his use of methamphetamine and alcohol. While the sentencing court's findings could be clearer on this point, it is apparent from its remarks that the trial judge believed that the defendant was "strung out" on drugs and alcohol during the period he went without sleep. RP (Apr. 30, 1999) at 35.

In sum, the Court of Appeals' holding that there was no evidence that Fowler's sleep deprivation was unrelated to the drugs and alcohol he voluntarily ingested finds support in the record. Because there is evidence that Fowler's sleep deprivation was associated with his voluntary consumption of alcohol and drugs, it cannot serve as a basis for an exceptional sentence.

■ Fowler contends, finally, that the Court of Appeals erred in holding that strong family support is not a substantial and compelling reason for imposing a below standard range sentence. The State argues in response that the fact that Fowler has strong family support is not a substantial and compelling reason for an exceptional sentence because it does not in any way distinguish his crime from others committing the same statutory category.

During sentencing, several of Fowler's family members addressed the court and testified that Fowler was not a violent person. Based on this testimony, the trial court found that Fowler had a "great deal of family support." *Id.* at 37. The Court of Appeals concluded that this is not a valid mitigating factor. We agree with it that the fact of family support does not relate to the crime committed by the defendant and, therefore, does not distinguish the crime from other crimes of the same statutory category. *See, e.g., State v. Hodges*, 70 Wn. App. 621, 626, 855 P.2d 291 (1993) ("The fact that Hodges . . . is needed by her children does not in any way distinguish her possession and delivery of cocaine."), *review denied*, 124 Wn.2d 1013, 879 P.2d 293 (1994).

## III. CONCLUSION

For reasons stated above, we conclude that the reasons relied on by the trial court for an exceptional sentence, whether viewed separately or collectively, were not substantial and compelling enough to justify an exceptional sentence. The Court of Appeals, therefore, properly reversed the sentence imposed by the sentencing court and

remanded for resentencing within the standard range.[5] Consequently, we affirm.

SMITH, IRELAND, BRIDGE, and OWENS, JJ., concur.

MADSEN, J. (dissenting) — In its apparent desire to further limit trial court discretion to impose an exceptional sentence downward, the latest in a continuing line of such cases, the majority has failed to appreciate the significance of two of the factors relied on by the trial court. In my view (and that of many other courts), both aberrational behavior and a low risk of reoffending are legitimate bases for an exceptional sentence downward.

As noted before, this court has not hesitated to recognize nonstatutory factors justifying exceptional sentences upward. *See State v. Freitag*, 127 Wn.2d 141, 146-47, 896 P.2d 1254, 905 P.2d 355 (1995) (Madsen, J., dissenting) (citing cases). The majority once again, however, refuses to recognize a legitimate nonstatutory mitigating factor. *E.g., Freitag*, 127 Wn.2d 141; *State v. Ha'mim*, 132 Wn.2d 834, 940 P.2d 633 (1997); *see Freitag*, 127 Wn.2d at 147-48. As I have previously pointed out, the Sentencing Reform Act of 1981 (SRA) calls for structured discretionary sentencing, but it has not abolished discretion. RCW 9.94A.010. The act has multiple goals beside punishment of the offender, including proportionate sentencing, promoting respect for the law by providing for just punishment, and providing an opportunity for the offender to improve himself or herself. *Id.* How can a sentencing judge be expected to exercise lawful discretion in sentencing to fulfill the purposes of the SRA if this court routinely denies that discretion where it results in a downward sentence, but expands its scope where exceptional sentences upward are concerned?

The defendant, Joshua Fowler, urges the court to follow federal cases recognizing aberrant behavior as a mitigating factor in sentencing. The majority summarily concludes

---

[5] Because we are affirming the reversal of the sentence, it is unnecessary for us to determine if the sentence imposed was clearly too lenient.

that calling a defendant's criminal conduct aberrational is simply another way of saying that the defendant has little or no history of criminal behavior—and this has been rejected as a basis for an exceptional sentence downward. Majority at 407-08. The majority does not address the federal standard in any meaningful way.

Federal courts agree that a lack of criminal history is not a basis for a downward sentence under the federal scheme. They conclude, however, that "aberrational behavior" is not equivalent to a lack of criminal history. *E.g., Zecevic v. United States Parole Comm'n,* 163 F.3d 731, 735 (2d Cir. 1998); *United States v. Rojas-Millan,* 234 F.3d 464, 475 n.7 (9th Cir. 2000); *United States v. Constantine,* 263 F.3d 1122, 1127 (10th Cir. 2001). As one court explained, "[a]n aberrant behavior departure must be based upon something other than the fact the act 'is merely a first offense.' 'Stated differently, the permissible factors in this context must illustrate some unique circumstance—some element of abnormal or exceptional behavior—beside the fact the defendant has never before committed the crime.' " *Constantine,* 263 F.3d at 1127 (citation omitted) (quoting *United States v. Benally,* 215 F.3d 1068, 1074 (10th Cir. 2000)). The majority's reason for refusing to recognize a similar standard as a nonstatutory mitigating factor in this state is without substance.

All of the federal circuits have recognized aberrational behavior as a factor that may, in the appropriate case, justify an exceptional sentence downward. *See generally* Elizabeth Williams, Annotation, *Downward Departure from United States Sentencing Guidelines (U.S.S.G. §§ 1A1.1 et seq.) Based on Aberrant Behavior,* 164 A.L.R. FED. 61, §§ 2, 3 (2000). A split developed in the circuits, however, as to what constitutes aberrational behavior. Some courts concluded that " 'a spontaneous and seemingly thoughtless act, rather than one which was the result of substantial planning' " was a single act of aberrant behavior. *Zecevic,* 163 F.3d at 734 (quoting *United States v. Carey,* 895 F.2d 318, 325 (7th Cir. 1990)). Others applied a totality of circum-

stances approach, considering a number of factors, including the singular nature of the act, psychological disorders that the defendant was suffering at the time, extreme pressures operating on the defendant such as that of losing a job, expressions from family and friends of shock at the defendant's behavior, the defendant's motivations for committing the act, the pecuniary gain derived from the offense, the defendant's efforts to mitigate the effects of the act, the defendant's employment history, and economic support of the defendant's family. *Id.* at 734-35 (citing cases). Under this approach courts have also looked to whether the act was a first offense and whether or not the defendant engaged in a significant period of advance planning or reflection. *Rojas-Millan*, 234 F.3d at 475 (citing cases). In November 2000, the federal sentencing commission added section 5K2.20 to the guidelines, defining "aberrant behavior" as "a single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law-abiding life." UNITED STATES SENTENCING COMMISSION GUIDELINES MANUAL § 5K2.20 cmt. 1 (2000). The commission directed that in deciding whether to depart from the guideline sentences on the basis of aberrant behavior, a court could consider the defendant's "(A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense," GUIDELINES MANUAL, *supra*, § 5K2.20 cmt. 2.

Regardless of whether aberrant behavior justifies a downward sentence in this case, this court should recognize that some crimes represent the truly unusual behavior of individuals who are generally nonviolent, law-abiding citizens committing crimes under unusual circumstances. Similar to the federal approach, this court should hold that a trial court may, in its discretion, impose an exceptional sentence downward based upon aberrant behavior. Factual considerations supporting this mitigating factor might in-

clude whether the offense was a first offense,[6] whether the act is singular in nature or part of a pattern or part of a criminal scheme, whether the defendant was suffering from any psychological disorders or was acting under any extreme pressures, psychological or otherwise, the defendant's motivations for the criminal act, whether the act was committed without significant planning or reflection, whether the criminal act was of limited duration, whether the defendant has tried to mitigate the effects of the offense, the defendant's employment record, and whether the defendant has a record of prior good works. In deciding whether aberrant behavior justifies a downward sentence, the court's focus should be on whether the defendant's case is one of the cases where the circumstances of the crime and defendant's relevant behavior take the case out of the usual realm into the extraordinary.

Here, the trial court believed that aberrational behavior is a relevant consideration, but said that alone, this factor did not justify a downward sentence. Conclusion of Law F. It is not clear, however, whether the court was uncertain that aberrational behavior could, alone, justify a downward sentence, or whether the court was not convinced that in this case aberrational behavior alone justified a downward sentence. While the latter may be debated, the trial court should make the determination in the first place with a clear understanding that aberrant behavior is a valid mitigating factor which will justify a downward sentence. The majority says, however, that even if the mitigating factor of aberrational behavior is accepted, the facts of this case do not justify an exceptional sentence. Ordinarily, when there is a new legal test adopted by this court, the court sends the matter back to the sentencing court rather than finding facts as the majority purports to do here.

---

[6] This is not to say that the fact of a first offense in and of itself supports a downward sentence. It may weigh in favor of such a sentence provided that in conjunction with other factual circumstances a truly aberrational act is established on the defendant's part.

Accordingly, remand is appropriate to allow the trial court to consider the issue. *See Rojas-Millan*, 234 F.3d at 475.[7]

The majority also rejects the trial court's reliance on a low to moderate risk of reoffending as supporting a downward sentence. The majority says that this is not a reason for an exceptional sentence downward because protection of the public is a goal that has been considered by the Legislature in computing the presumptive sentencing range. Majority at 409. A presumptive sentencing range is based upon the seriousness level of the current offense and the defendant's offender score. Whether the individual defendant has a low, moderate, or high risk of reoffending is not part of the calculation. Thus, I disagree with the majority's reason for rejecting a low to moderate risk of reoffending as a mitigating factor. Further, this court has in the past accepted the premise that future dangerousness is an appropriate nonstatutory aggravating factor under certain circumstances involving offenders convicted of sex offenses. *State v. Strauss*, 119 Wn.2d 401, 414, 832 P.2d 78 (1992); *State v. Pryor*, 115 Wn.2d 445, 799 P.2d 244 (1990). If future dangerousness can justify an upward sentence, albeit in limited cases, why should a low risk of reoffending be rejected as a mitigating factor? At least two of the goals of the SRA favor allowing sentencing discretion to impose a downward sentence where there is a low risk of reoffending: the promotion of respect for the law by provision of just punishment, and making frugal use of the state's resources. RCW 9.94A.010(2), (6). Moreover, contrary to the majority's analysis, the goal of protecting the public is well served by permitting such discretion because an individual with a low risk of reoffending does not pose the same risk as other offenders. I would hold that a low risk of reoffending is a valid mitigating factor.

The SRA does not eliminate sentencing discretion. A sentencing judge is still in the best position to make case by

---

[7] In any event, this court has not previously addressed the question of aberrational behavior, and for this reason, too, I believe it is appropriate to remand with this court's opinion providing direction as to how the factor may be applied.

case assessments to determine whether there are substantial and compelling reasons to impose a sentence outside the standard sentencing range. The Legislature has left that discretion to the sentencing judge where aggravating circumstances call for punishment beyond the presumptive sentence. It has also left that discretion where mitigating circumstances call for punishment less than the presumptive sentence. In my view, this court has not taken an evenhanded approach to review. Nonstatutory aggravating factors are overwhelmingly upheld. Nonstatutory mitigating factors are rarely upheld. This case provides another opportunity to recognize legitimate nonstatutory mitigating factors and reaffirm judicial independence. Sadly, the majority does not take advantage of the opportunity.

I would reverse the Court of Appeals and remand this case for resentencing.

JOHNSON, SANDERS, and CHAMBERS, JJ., concur with MADSEN, J.