IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31206-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOHN HERBERT FRIEDLUND, | ) | |
| | ) | |
| Appellant. | ) | |

KULIK, J. — John Friedlund appeals his conviction for first degree theft. Mr. Friedlund misappropriated approximately $600,000 from an elderly woman in his care. A jury found Mr. Friedlund guilty of the aggravating circumstances of using a position of trust to facilitate the offense and involving a victim who was particularly vulnerable or incapable of resistance. Mr. Friedlund contends his exceptional sentence of 120 months is clearly excessive. He also claims ineffective assistance of counsel. His arguments are unpersuasive. We affirm the conviction and the exceptional sentence.

FACTS

Mr. Friedlund was a close family friend of Severt and Frances Swan for over 60 years. In 2000, after Mr. Swan passed away, Ms. Swan called Mr. Friedlund to help her. Mr. Friedlund moved into Ms. Swan's home in 2001 when she was 96 years old. Mr. Friedlund was 68 or 69 years old. Ms. Swan named Mr. Friedlund as her primary attorney in fact and designated a relative as an alternative.

Over the course of Mr. Friedlund's care of Ms. Swan, Ms. Swan went from being able to join Mr. Friedlund at the table for dinner, to spending most of her time in her bedroom. Mr. Friedlund instructed caregivers to keep Ms. Swan in her bedroom. She was rarely allowed any telephone calls or visitors.

Mr. Friedlund brought his belongings to Ms. Swan's home. Mr. Friedlund instructed caregivers that no one was to touch his possessions. Within a few years of moving in, boxes and garbage were stacked from floor to ceiling, with only narrow pathways for movement between rooms. The yard became unkempt, with overgrown grass and dog feces littering the yard. Caregivers reported that Mr. Friedlund stored rotten food in the home and directed them to feed it to Ms. Swan.

In 2006, Ms. Swan and Mr. Friedlund contacted an independent financial advisor at Edward R. Jones. The advisor recognized that Ms. Swan had difficulty understanding

2

and managing her assets. Ms. Swan, who was now over 100 years old, was becoming more dependent on caregivers and needed a consistent flow of cash to meet those expenses. Ms. Swan transferred approximately $800,000 into the Edward Jones account.

The advisor continued to meet with Ms. Swan and Mr. Friedlund. However, as Ms. Swan became more frail, the advisor had fewer meetings with Ms. Swan and more contact with Mr. Friedlund. Mr. Friedlund used his power of attorney to make financial decisions for Ms. Swan.

In 2007, Mr. Friedlund sought to move a large quantity of the assets out of the Edward Jones account to a bank account. The financial advisor did not consider this a wise financial decision because the Edward Jones account was accomplishing its purpose of generating the income needed to pay caregivers. Putting the assets in the bank would generate less income. Also, the amount of the transfer to the bank would far exceed the $100,000 insured limit of a bank. The advisor visited Ms. Swan at her home and verified the transfer, but still thought the transfer was Mr. Friedlund's idea.

Eventually, all $800,000 was transferred out of the Edward Jones account. The money was transferred into a joint bank account in the names of Mr. Friedlund and Ms. Swan. Mr. Friedlund then moved money from the joint checking account to his personal bank account on a monthly basis.

Mr. Friedlund hired, supervised, and paid Ms. Swan's caregivers. Between 2007 and 2010, the cost for the caregivers was approximately $200,000. Also during this time, Mr. Friedlund made numerous purchases with Ms. Swan's bank account funds. For example, he purchased two trucks, a horse trailer, a lifetime membership to the National Rifle Association, a welding machine, hay, and a car. He also paid his prescription medications and doctor bills. Mr. Friedlund testified that he discussed his transactions with Ms. Swan and that she approved the purchases. He stated that Ms. Swan told him that the money belonged to both her and Mr. Friedlund.

Mr. Friedlund also made over $400,000 in wire transfers out of Ms. Swan's account. Mr. Friedlund testified that Ms. Swan directed him to make the wire transfers to individuals that the two of them met on www.gaysugardaddyfinder.com. He also testified that he and Ms. Swan used the website because they were both interested in what caused homosexuality.

Stevens County sheriff's officers visited Ms. Swan's home after receiving a report that there was an elderly woman living in the home who had not been seen for some time. The officers found garbage, feces, and deceased pets outside the home. Inside the home, garbage and boxes filled the rooms to the extent that officers had only a narrow path to move. There was rotting food on the kitchen counter and dog feces on the floor, giving

the home a concentrated smell. When the officers contacted Ms. Swan in her bedroom, a detective testified that Ms. Swan appeared to be fearful and in immediate need of help. Emergency medical services took Ms. Swan to the hospital. Eventually, Adult Protective Services removed Ms. Swan from the home after receiving allegations of lack of care.

In 2011, a guardian was appointed for Ms. Swan. Ms. Swan had $6,000 left in a checking account.

Mr. Friedlund was charged by amended information with first degree theft of Ms. Swan's money. The State alleged the theft involved a series of transactions that were a part of a common plan or scheme. The State also charged Mr. Friedlund with the aggravating circumstances of using a position of trust to facilitate the offense and a victim who was particularly vulnerable or incapable of resistance. He was also charged with criminal mistreatment in the second degree. The two matters were joined for trial.

After a jury trial, Mr. Friedlund was found guilty of first degree theft and the charged aggravating circumstances. The jury did not reach a verdict on the charge of criminal mistreatment. The standard range was 3 to 9 months. Mr. Friedlund was 79 years old at the time of sentencing. He had no criminal history that counted toward sentencing. The court imposed an exceptional sentence of 120 months. Mr. Friedlund appeals.

5

ANALYSIS

First, Mr. Friedlund contends that the trial court erred by failing to enter written findings of fact and conclusions of law to support the exceptional sentence.

RCW 9.94A.535 provides, "Whenever a sentence outside the standard range is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law." While this requirement is mandatory, appeals courts have permitted review when a trial court's oral ruling is sufficiently comprehensive and clear that written facts would be a mere formality. *See State v. Bluehorse*, 159 Wn. App. 410, 423, 248 P.3d 537 (2011) (quoting *State v. Hickman*, 157 Wn. App. 767, 771 n.2, 238 P.3d 1240 (2010)). In this situation, the failure to enter written findings and conclusions is harmless. *Id.* Such is the case here.

The jury found two aggravating factors, which Mr. Friedlund does not challenge on appeal. The record shows that the trial court relied on the jury's finding of two aggravating factors when imposing the exceptional sentence. The court stated, "The range that I have here, the standard range, is three to nine months, but there have been two aggravating factors that were found by the jury—that you took advantage of the vulnerability of Frances Swan and also that you took advantage and abused the trust, the fiduciary duty that you had as her—holding her power of attorney." Report of

6

Proceedings (RP) at 450. Later, the court repeated, "And, again, you took advantage of a vulnerable person. So, the sentence of the Court is 120 months." RP at 451. Based on the oral ruling, it is sufficiently clear that the trial court imposed the exceptional sentence based on the aggravating factors found by the jury.

The trial court's oral opinion clearly and sufficiently articulates the exceptional sentence was imposed based on the jury's finding of the aggravating circumstances. Therefore, we do not remand for specific written findings and conclusions reiterating the aggravating factors as the basis for the exceptional sentence. *Bluehorse*, 159 Wn. App. at 423.

Second, Mr. Friedlund contends that the 120-month exceptional sentence was clearly excessive under the circumstances of this case. He points out that the sentence was 40 times the low end of the standard range of 3 to 6 months, he had no prior criminal history, and the length equates to a life sentence based on his age and heart condition.

Generally, a court must impose a sentence within the standard sentencing range. *State v. Fowler*, 145 Wn.2d 400, 404, 38 P.3d 335 (2002). However, a sentencing court may impose a sentence above the standard range for reasons that are "substantial and compelling." RCW 9.94A.535. A judge exercises his or her discretion in determining whether the aggravating facts found by the jury warrants an exceptional sentence and, if

7

warranted, the appropriate length of the sentence. *State v. Rowland*, 160 Wn. App. 316, 330, 249 P.3d 635 (2011), *aff'd*, 174 Wn.2d 150, 272 P.3d 242 (2012).

Reviewing courts have near plenary discretion to affirm the length of an exceptional sentence, just as the trial court has all but unbridled discretion in setting the length of the sentence. *State v. Halsey*, 140 Wn. App. 313, 325, 165 P.3d 409 (2007) (quoting *State v. Creekmore*, 55 Wn. App. 852, 864, 783 P.2d 1068 (1989)).

A clearly excessive sentence is one that is exercised on untenable grounds or untenable reasons, or is an action that no reasonable person would have taken. *State v. Ross*, 71 Wn. App. 556, 571, 861 P.2d 473, 883 P.2d 329 (1993) (quoting *State v. Oxborrow*, 106 Wn.2d 525, 531, 723 P.2d 1123 (1986)). "When a sentencing court bases an exceptional sentence on proper reasons, we rule that sentence excessive only if its length, in light of the record, 'shocks the conscience.'" *State v. Knutz*, 161 Wn. App. 395, 410-11, 253 P.3d 437 (2011) (internal quotation marks omitted) (quoting *State v. Kolesnik*, 146 Wn. App. 790, 805, 192 P.3d 937 (2008)). A sentence shocks the conscience if it is a sentence that "'no reasonable person would adopt.'" *Id*. at 411 (quoting *Halsey*, 140 Wn. App. at 324-25).

In *Knutz*, the defendant was sentenced to 5 years for first degree theft after she took more than $300,000 from an elderly victim. *Id*. The standard range was 2 to 6

8

months. *Id.* at 402. The reviewing court found that the exceptional sentence was not clearly excessive and did not shock the conscience when the jury found three aggravating factors that supported the exceptional sentence and because of the extreme amounts of money involved. *Id.* at 411.

Here, the trial court did not abuse its discretion when sentencing Mr. Friedlund to 10 years. The sentence was not unreasonable based on the record before the court. The court noted that Mr. Friedlund ignored the legal and moral duty to his longtime friend by keeping her alive to avoid probate and, at the same time, keeping her isolated from her family and friends. The court told Mr. Friedlund, "Your behavior has been predatory, and cruel, and self-serving, and your malignant manipulation of this elderly woman in her vulnerable state where she looked to you for protection is particularly reprehensible." RP at 451. The court also recognized the enormity of the crime, citing that Mr. Friedlund wrongfully obtained $600,000 of Ms. Swan's assets and that it was one of the largest thefts in his three-county area. In comparing this case to another high dollar theft case involving scrap metal, the court stated, "Now, this case though, in my judgment, is even worse because of the amount, but even more so because of the betrayal of the legal duty and the personal moral duty that you owed here. And, again, you took advantage of a

vulnerable person." RP at 451. The trial court also noted that Mr. Friedlund showed no remorse for what he did to Ms. Swan and continued to blame others.

The trial court's reasoning justified departure from the standard range. Mr. Friedlund used a position of authority to misappropriate funds from a 100-year-old woman who trusted him and depended on him for care. The amount of money misappropriated was excessive. The $600,000 taken by Mr. Friedlund was needed by Ms. Swan to pay for her ever-increasing health care costs. Instead, Mr. Friedlund left Ms. Swan with less than $6,000. Ms. Swan's family told the sentencing court that her wish was to stay in her home, but she no longer has a home to go to because it was sold to pay the State's lien for her care. Based on these circumstances, the sentence is not clearly excessive. The length of the sentence does not shock the conscience, considering the position of trust that Mr. Friedlund abused, the vulnerability of Ms. Swan, and the large amount of money involved that Ms. Swan was dependent upon for her care.

Mr. Friedlund contends that the trial court should have considered his age and his health conditions when determining the length of his sentence. He provides no authority for this position. The court knew Mr. Friedlund's age and health condition. However, the court had the discretion to conclude that these factors did not carry the same weight as

10

the aggravating factors found by the jury. The exceptional sentence is not excessive and was within the trial court's discretion.

Third, Mr. Friedlund contends that he received ineffective assistance of counsel. He maintains that his attorney's representation was deficient because he failed to raise or investigate a diminished capacity defense based on the evidence of Mr. Friedlund's hoarding, and that this failure prejudiced him by losing the right to assert the defense.

"To demonstrate ineffective assistance of counsel, a defendant must make two showings: (1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The appellant must show that there is a sufficient basis in the record to rebut the strong presumption that counsel's representation was effective. *Id.* at 335.

The evidence in the record does not support Mr. Friedlund's ineffective assistance of counsel claim. Defense counsel did not act unreasonably when he failed to consider a diminished capacity defense. The record does not show that Mr. Friedlund suffered from

11

a mental condition. While the record shows that Mr. Friedlund filled Ms. Swan's home with garbage and boxes, it is not reasonable to conclude that these actions were caused by diminished capacity. On the contrary, Mr. Friedlund had the capacity to participate in his defense. He continually claimed that he completed the purchases with Ms. Swan. He did not claim to have an obsession for hoarding, even though he brought other issues regarding his health to the court's attention.

Additionally, even if he did suffer from a disorder, it is not unreasonable for defense counsel to conclude that his compulsion had no effect on his misappropriation of Ms. Swan's money. His allegedly diminished mental capacity was not enough to absolve him of criminal responsibility.

Counsel's performance was not deficient. Furthermore, even if we were to find defense counsel's performance deficient, Mr. Friedlund fails to show prejudice as a result of the performance. As previously stated, it is not probable that a diminished capacity defense would have been successful or would have produced a different result at trial.

Mr. Friedlund's claim of ineffective assistance of counsel fails.

No. 31206-2-III
*State v. Friedlund*

We affirm the conviction and exceptional sentence of 120 months.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Kulik, J.

WE CONCUR:

_____          _____
Korsmo, C.J.                              Fearing, J.

13