

IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77437-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CAMERON F. PATTERSON, | ) | |
| | ) | |
| Appellant. | ) | FILED: February 5, 2019 |
| | ) | |

ANDRUS, J. — Cameron Patterson pleaded guilty to robbery in the first degree and unlawful imprisonment after participating in an armed robbery of a marijuana dispensary. CP 29-30. The court sentenced Patterson to 36 months for count one (robbery), a concurrent 3-month sentence for count two (unlawful imprisonment), and a 60-month firearm enhancement, to be served consecutively to the 36-month sentence. We affirm Patterson's sentence.

## FACTS

Patterson agreed to participate in what he thought was the organized robbery of the Have a Heart marijuana dispensary in the Greenwood neighborhood of Seattle at the suggestion of his friend, John Stewart. CP 31. Patterson believed it was an "inside job" in which all of the employees knew what was going to happen and intended to split the proceeds. RP (8/25/17) 16. One of the dispensary

employees, Sean Sylve, assured Patterson that the robbery would be a "grab and go," where the marijuana and money would be in plain view and easily available for taking. CP 56.

On the evening of August 7, 2016, Patterson, Stewart, and Sylve executed the plan. CP 31. Slyve was working at the dispensary, along with his co-workers, Alanna Wells and McKenna O'Meara. CP 31. Wells and O'Meara were unaware of the plan. While Sylve checked the outside perimeter of the premises, a routine closing duty, Patterson and Stewart donned Halloween masks and approached him. CP 31. Sylve knocked on the store's locked door which Wells opened for him. CP 31. Sylve whispered to Wells to lock the door because they were being robbed. CP 31. When Wells tried to close the door, Patterson and Stewart pushed the door open and entered the dispensary. CP 31. Holding a gun, Stewart demanded that Sylve and Wells lie down on the floor with their hands behind their backs. CP 31. Patterson and Stewart used zip ties to bind the employees' hands together. CP 31. Patterson and Stewart spotted O'Meara, who was in a different room counting her cash tray. CP 31. They ordered her to lie down on the floor, again at gunpoint, as they zip tied her hands together. CP 32.

Patterson took $900 from the dispensary's safe, while Stewart removed approximately $20,000 worth of marijuana products from the display case. CP 32. The dispensary's manager, who watched the events unfold through the store's surveillance system, called 9-1-1. CP 32. Seattle police officers responded and set up a containment area outside of the dispensary. CP 32. The officers watched Stewart and Patterson exit the store with two large duffel bags containing cash, a

- 2 -

money counting machine, marijuana, and other products. CP 32. When ordered to stop, Stewart and Patterson dropped the bags, the gun, their Halloween masks, and additional zip ties, and were eventually taken into custody. CP 32.

Patterson was initially charged with one count of first degree robbery and one count of first degree kidnapping, CP 2, but following negotiations, Patterson pleaded guilty to the robbery and unlawful imprisonment, CP 12, 14. Patterson agreed to a minimum standard range sentence for both counts: 36 months for the robbery and 3 months for the unlawful imprisonment, with a firearm enhancement of 60 months to be served consecutive to the robbery sentence. CP 18.

Patterson asked the court to follow the agreed sentencing recommendation. He argued that the low end sentence was appropriate because he was a loving, supportive father of seven young children, had experienced a difficult upbringing surrounded by poverty and gang and domestic violence, during which he had observed his mother cut his father's throat, had demonstrated high moral character and strong family and community support, had no prior felony convictions, and had intended to commit only a theft, not a robbery. CP 44-56; RP (8/25/17) at 11-17. At his sentencing hearing, Patterson's counsel argued Patterson lacked the intent to engage in an armed robbery:

> And that's been a very hard lesson for Mr. Patterson to learn because he never intended to be a part of a robbery. He never held the gun in his hand, he didn't think that his codefendant would have the gun; but his codefendant did come in with a gun to Mr. Patterson's surprise and at that point he was involved in a robbery and not a theft. And, hence, the long sentence that he's getting, here.

RP (8/25/17) at 16. Patterson also presented letters from family members and friends attesting to his good character, writing about the respect they have for his

leadership in the community, his commitment to his family, and his kindness. They all expressed how uncharacteristic his crime was. CP 59-108.

The sentencing court accepted the recommended sentence. CP 113. The court acknowledged the harshness of the sentence and indicated it had looked to see if it could impose an exceptional sentence but found an insufficient basis for departing from the standard sentencing range. RP (8/25/17) 20. The court stated:

> And I'm sure as your attorney has explained there are very, very few circumstances under which this court could make an exceptional sentence. And, trust me, I looked. I looked if there was any duress. I looked if there was anything.
>
> But what I see is a man who, albeit making a horrible decision. And as I read those letters, I don't understand what you're doing here. I don't understand how you are before me having gone through what you went through as a child, having seen what you saw as a child, how that decision would be made.
>
> You don't have the benefit of being a young, stupid kid who's not mature enough. You did this at age 36. You don't have the benefit of saying, "I didn't know what I was doing." You put on a mask. I mean, I – as I sit there and look for it, this was – you – there's nothing I can say.
>
> I recognize that the punishment that has been imposed by the legislature, frankly, is harsh. And I know that not every case fits into these circumstances, but there's very, very limited circumstances in which I can change those sentences. And as much as I look to that, I can't find it in this case.
>
> I'm going to impose the minimum. I will note that even that minimum, given the weapons enhancement, may seem unfair. But I want you to know that it's because of certain legislative dictates. That if there was what I felt to be any wiggle room in terms of as I look at what exceptional sentences mean and what are the standards under which they can be applied where – where somebody would think I'm not abusing my discretion, I would go there. I've done it. But I can't find it here.

RP (8/25/17) 19-21.

Patterson appeals his sentence, arguing the court refused to consider his failed "lack of intent to commit armed robbery" defense and the "aberrational conduct" information provided by his family and friends, both of which justified an exceptional sentence. He also argues the court abused its discretion in not reducing the duration of the firearm enhancement.

ANALYSIS

The Sentencing Reform Act (SRA) states that a sentence within the standard range may not be appealed. RCW 9.94A.585(1); see also State v. Herzog, 112 Wn.2d 419, 423, 771 P.2d 739 (1989) ("When the sentence given is within the presumptive sentence range then as a matter of law there can be no abuse of discretion and there is no right to appeal"). A defendant may, however, challenge the procedure by which a standard range sentence is calculated. When a defendant challenges the denial of an exceptional sentence, review is limited to whether the sentencing court categorically refused to impose an exceptional sentence downward under any circumstance or relied on an impermissible basis for refusing to do so. State v. Garcia-Martinez, 88 Wn. App. 322, 329-30, 944 P.2d 1104 (1997); see also State v. O'Dell, 183 Wn.2d 680, 697, 358 P.3d 359, 367 (2015) (a court abuses its discretion when it fails to consider a mitigating factor on the mistaken belief it is barred from such consideration).

Patterson did not request an exceptional sentence. During the plea hearing, Patterson acknowledged the low end sentence was the product of an agreement "so that we cannot ask for a downward departure." RP (8/8/17) at 24. He nevertheless argues on appeal that the sentencing court refused to recognize his

failed *mens rea* defense and aberrational conduct arguments justified an exceptional sentence. App. Br. at 8-9. He claims the sentencing court's "failure to exercise discretion" is itself an abuse of discretion subject to reversal under O'Dell, 183 Wn.2d at 697. App. Br. at 13-14.

The State contends Patterson cannot claim on appeal the trial court abused its discretion because he never asked the court to exercise discretion in the first place, citing Colorado Structures, Inc. v. Blue Mountain Plaza, LLC, 159 Wn. App. 654, 660, 246 P.3d 835 (2011) and State v. Lile, 188 Wn.2d 766, 787, n.14, 398 P.3d 1052 (2017). But neither Colorado Structures nor Lile dealt with a trial court's purported refusal to consider mitigating circumstances.

A defendant's failure to request an exceptional sentence does not necessarily preclude a challenge on appeal. In State v. McFarland, the defendant did not request an exceptional sentence, despite facing 237 months confinement due to consecutively-imposed firearm enhancements, because both defense counsel and the sentencing court erroneously concluded an exceptional sentence was foreclosed by law. 189 Wn.2d 47, 49, 399 P.3d 1106 (2017).

The Supreme Court did not reject McFarland's appeal simply because she did not seek an exceptional sentence from the trial court. It reversed McFarland's sentence, holding that when consecutive sentences for multiple firearm-related convictions result in a sentence that is "clearly excessive" under RCW 9.94A.535(1)(g), a sentencing court has discretion to impose an exceptional, mitigated sentence by running the firearm-related sentences concurrently. Id. at 55. The Supreme Court remanded the case for resentencing, concluding that "the

record suggests at least the possibility that the sentencing court would have considered imposing concurrent firearm-related sentences had it properly understood its discretion to do so." Id. at 56, 59; see also State v. McGill, 112 Wn. App 95, 100, 47 P.3d 173 (2002) (court erroneously believed it lacked discretion to depart from the standard range; this court reversed and remanded, reasoning that "the trial court's comments indicate it would have considered an exceptional sentence had it known it could").

Under McFarland, a defendant may appeal a standard sentence if the record establishes the sentencing court erroneously concluded an exceptional sentence was not available to a defendant.

Patterson contends the sentencing court erroneously held it lacked discretion to consider his failed lack of intent defense and his aberrational conduct arguments. We conclude the sentencing court considered his failed lack of intent defense and found it insufficient to justify an exceptional sentence, a decision Patterson may not appeal. And we conclude the sentencing court did not have the discretion to consider Patterson's "aberrational conduct" argument.

To determine if a factor supports departure from the standard sentencing range, we apply a two-part test. O'Dell, 183 Wn.2d at 690. First, a factor cannot support the imposition of an exceptional sentence if the legislature necessarily considered that factor when it established the sentence range. Id. This is a question of law reviewed de novo. Id. at 688.

Second, in order to justify an exceptional sentence, a factor must be "sufficiently substantial and compelling to distinguish the crime in question from

others in the same category." Id. at 690. The Supreme Court has said that "any such reasons must relate to the crime and make it more, or less, egregious." State v. Fowler, 145 Wn.2d 400, 404, 38 P.3d 335 (2002). If a sentencing court finds a particular factor meets the "substantial and compelling" test, the standard of review is clearly erroneous. Ha'mim, 132 Wn.2d at 840.

The Supreme Court has recognized, and the State does not dispute, that a trial court has the discretion to consider failed defenses, such as self-defense, duress, mental conditions not amounting to insanity, and entrapment, when evaluating the appropriateness of an exceptional sentence. State v. Jeannotte, 133 Wn.2d 847, 852, 947 P.2d 1192 (1997). "By allowing failed defenses to be treated as mitigating circumstances, the Legislature recognized there may be circumstances that led to the crime, even though falling short of establishing a legal defense, [that] justify distinguishing the conduct from that in other similar cases." Id. at 852 (internal quotation marks omitted) (quoting Hutsell, 120 Wn.2d at 921).

The record establishes that the sentencing court considered this failed defense. While the sentencing court did not explicitly mention it, Patterson raised this defense in both his sentencing memo and at the hearing itself. The court said it considered all possible mitigating factors it could find in the materials presented:

> I'm sure as your attorney has explained there are very, very few circumstances under which this court could make an exceptional sentence. *And, trust me, I looked. I looked if there was any duress. I looked if there was anything.*
> . . .
> I recognize that the punishment that has been imposed by the legislature, frankly, is harsh. And I know that not every case fits into these circumstances, but there's very, very limited circumstances in which I can change those sentences. *And as much as I look to that, I can't find it in this case.*

RP (8/25/17) 19-20 (emphasis added). This record demonstrates the sentencing court knew an exceptional sentence was an option, considered the facts to see if it could justify an exceptional sentence, and concluded it could not. There is nothing in the record to suggest the sentencing court categorically refused to consider Patterson's failed defense argument.

Patterson also contends the sentencing court refused to consider that this crime was uncharacteristic (or an aberration) for him. App. Br. at 14. Patterson relies on federal case law and Justice Madsen's dissent in State v. Fowler, 145 Wn.2d 400, 412, 38 P.3d 335 (2002) for the proposition that aberrational behavior and a low risk of re-offending are sufficient bases for an exceptional sentence.

Fowler pleaded guilty to first degree robbery which carried a standard range of 31-41 months. Id. The sentencing court imposed a 15-month exceptional sentence because Fowler had no criminal history, his behavior during the crime was aberrational, and Fowler was unlikely to re-offend. Id. at 403-04. A majority of the Supreme Court reversed the exceptional sentence. It refused to follow federal cases that held aberrational conduct is a valid mitigating factor. Id. at 407. The majority reasoned that Fowler's aberrational conduct argument was similar to arguing "the defendant has not done anything like this before," analogous to saying the defendant has no criminal history, a factor already taken into account in the standard sentencing ranges under the SRA. Id. at 408 ("The fact that a defendant's criminal conduct is exceptional or aberrant does not distinguish the defendant's crime from others in the same category"). Under Fowler, a sentencing court may not consider the fact that a defendant's crime was an aberration because this factor

was necessarily taken into account by the legislature when it set standard sentence ranges.

Patterson argues that O'Dell abrogated Fowler *sub silentio*. He contends that under O'Dell, a sentencing court has the discretion to consider personal characteristics of a defendant. We disagree with this reading of O'Dell. In that case, the Supreme Court held the legislature had not necessarily considered youth when it established standard range sentences under the SRA. O'Dell, 183 Wn.2d at 690. As a result, it concluded that a trial court must be allowed to consider youth as a mitigating factor, explicitly disavowed any contrary holding in Ha'mim. We can find no language in O'Dell that broadens its holding to a defendant's aberrant conduct or a low likelihood to reoffend. Nor can we conclude the Supreme Court intended to abrogate Fowler; its decision in O'Dell did not analyze whether Fowler had been incorrectly decided. See State v. Stalker, 152 Wn. App. 805, 812, 219 P.3d 722 (2009)(Supreme Court abrogates prior decisions only if party seeking to have decision overruled demonstrates precedent is both incorrect and harmful).

Because our state Supreme Court has explicitly held, under a similar set of facts, that a sentencing court does not have the discretion to consider, as a mitigating factor, whether a defendant's conduct was an aberration from his general character, the sentencing court did not abuse its discretion in this case.

Finally, Patterson argues that the SRA gives the sentencing court discretion to shorten the duration of the 60-month firearm enhancement as an exceptional sentence. RCW 9.94A.533(3) provides that the firearm enhancement, if applicable, is mandatory, "notwithstanding any other provision of law." In State v.

Brown, 139 Wn.2d 20, 29, 983 P.2d 608 (1999), overruled on other grounds by State v. Houston-Sconiers, 188 Wn.2d 1, 391 P.3d 409 (2017), our Supreme Court held that "[j]udicial discretion to impose an exceptional sentence does not extend to a deadly weapon enhancement." Id. at 29. Although the Court's recent decision in Houston-Sconiers modified Brown, it did so only with respect to juvenile offenders and Eighth Amendment considerations. 188 Wn.2d at 34. The Court did not modify Brown's applicability to adult defendants.

Thus, under Brown, the sentencing court had no authority to shorten the duration of Patterson's firearm enhancement.

Affirmed.

WE CONCUR:

_Andrus, J._

_Mann, A.C.J._

_Verellen, J._