[No. 46191-5-I. Division One. July 16, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES KEVIN McCLARNEY, *Appellant*.

*James K. McClarney*, pro se.

*Sarah M. Hrobsky* (of *Washington Appellate Project*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Keith P. Scully, Deputy*, for respondent.

AGID, C.J. — James McClarney appeals his convictions for first degree burglary and second degree assault, contending there was insufficient evidence for the jury to find the "remained unlawfully" element of burglary and that the trial court erred by granting multiple extensions of the trial date after the speedy trial period had expired. The State cross-appeals, arguing the trial court erred in granting an exceptional sentence downward based solely on its findings that McClarney demonstrated "extreme remorse" at trial and at sentencing. In a pro se submission, McClarney claims the trial court erroneously determined that the burglary and assault were not the same criminal conduct for purposes of calculating his offender score. We affirm McClarney's conviction and offender score, but remand for sentencing within the standard range because exceptional remorse is not a valid basis for an exceptional sentence downward.

## FACTS

McClarney met Rene Schwald in August 1995. They dated and lived together for a few years in Schwald's studio apartment on West Gayler Street in Seattle. The couple split up in May 1999, and McClarney rented his own apartment nearby on First Avenue West. Schwald testified that after the break-up she and McClarney were "still really good friends" and that he would often stay at her place overnight because he was having problems with his new landlord. Schwald testified that McClarney did not have a key to the apartment and was not able to come and go as he pleased, but that he would regularly stop by and ask to stay there when she was home.

In September 1999, Schwald gave McClarney a key because she had agreed to let him stay with her until he left for a fishing job in Alaska "in a week or two." Schwald testified that she approved of McClarney staying with her until he left for Alaska but that she didn't want him to move in any of his belongings. McClarney testified that he had "moved back in" with Schwald during this time and thought they had gotten back together.

On September 10, two or three nights into the one- or two-week period before McClarney left for Alaska, McClarney finished a construction job early in the afternoon and went to a bar where he drank about seven tequila drinks. After a few hours at the bar, he went to a restaurant for dinner and drank several beers. At about 7:00 P.M. he returned to Schwald's apartment, let himself in with the key, and fell asleep.

Schwald came home from work at about 8:30 P.M. She predicted that McClarney was in the apartment because when she put her key in the door, it was already unlocked. When Schwald walked in she noticed that the apartment was dark and quiet and found McClarney lying on the bed. She could tell that he had been drinking because "he had the place all closed up" and she could smell alcohol. Schwald asked McClarney repeatedly what he was doing, but in response "[h]e just kind of mumbled or grumbled." Schwald testified that she told McClarney he would have to leave three or four times, but she didn't remember if he initially responded. McClarney characterized Schwald's words differently and testified that he heard Schwald shout obscenities at him and ask him why he was drunk and smoked cigarettes, why he is such a loser, and why he was on the bed with his work clothes on.

Schwald walked into the kitchen, which was about 10 feet away from the bed, and began putting away the food she had brought home. She again said to McClarney, "[P]lease go. You are going [to] have to." According to Schwald, McClarney responded to her last request that he leave by getting up and smashing things in her apartment: "He just

jumped to his feet, like he was set on fire. He jumped to his feet, then something went crash. . . . Then the things started flying. . . . I just heard crashing, bang, everything." McClarney said he does not remember ever hearing Schwald tell him to leave the apartment. He also testified that he didn't really know what Schwald was yelling but "[s]he must have said something that really just hit a nerve" before he got up.

While McClarney was damaging property in her living room, Schwald protested from the kitchen and pleaded with McClarney, "[P]lease . . . don't wreck anything else." McClarney entered the kitchen and hit her in the face, causing her to bleed around the eye. She crouched by the wall in a corner while he kicked the wall near her head four or five times. Schwald put her hands over her head because she was afraid McClarney was going to kick her in the face. McClarney testified that in kicking the wall, "I was just taking out rage for whatever she had said. I have to imagine. I can't say." McClarney moved away from the wall, and Schwald got up and ran from the apartment. McClarney followed her and "said something about, 'you are not getting out of here.'" Screaming, Schwald yelled for somebody to call 9-1-1 and ran into a neighbor's apartment. The police arrived a few minutes later. Schwald later went to the hospital and had five stitches around her eye.

McClarney returned to the apartment, but then left with Schwald's Dalmatian puppy before the police arrived because he was concerned that the puppy might get into some broken glass. McClarney took the puppy to a friend's house and then went to a bar and drank. He spent the night at his First Avenue West apartment, where the police found him the following day. He initially denied involvement in the incident but later cooperated with the police.

McClarney was charged by information with one count of first degree burglary. The State later amended the information to add one count of second degree assault and one count of first degree malicious mischief. Trial was set for November 24, 1999; the speedy trial period expired on November

26, 1999. The trial court granted several short extensions of the time for trial after the speedy trial period had expired. The State moved to dismiss the malicious mischief charge before trial because the State had not received any evidence of the value of the property destroyed.

After a jury trial, McClarney was convicted of both remaining counts. At sentencing, the trial court ruled that the burglary and assault were not the same criminal conduct and scored one point for each crime. The court then calculated McClarney's offender score as four, after adding two points for his prior robbery conviction, and imposed a standard range sentence. The court rejected McClarney's request for a downward departure based on his contention that the burglary involved here was much less serious than the typical burglary. The court noted, however, that McClarney had exhibited an unusual amount of remorse and invited McClarney to bring a motion to reconsider the sentence if he believed there were legal grounds to justify a downward departure on that basis.

McClarney moved for reconsideration, and the court determined that an exceptional sentence below the standard range was warranted because of the exceptional remorse McClarney had demonstrated at trial and at sentencing. The court imposed a 24-month sentence, one year below the bottom of the standard range.

## DISCUSSION

*Extreme Remorse as Basis for Exceptional Sentence Downward*

We first address the State's cross-appeal, in which it contends the trial court erred as a matter of law when it imposed an exceptional sentence downward based on its finding that McClarney demonstrated extreme remorse.[1] The court found:

---

[1] In his brief and in his motion to dismiss the State's cross-appeal pursuant to RAP 9.2(b), McClarney urges this court to reject the State's cross-appeal, alleging the State failed to file a verbatim report of the sentencing hearings with this court. The record now contains those reports, and we will rule on the State's cross-appeal.

Based on all of the Court's observations, this Court concludes that Mr. McClarney is extremely remorseful for his behavior. In fact, this Court would characterize Mr. McClarney's amount of remorse as the most profound this Court has observed.

This Court recognizes that many defendants are remorseful to some degree once they are charged with a crime. This Court also recognizes that defendant's [sic] accused of domestic related crimes are often remorseful for their actions after the fact.

This Court finds that Mr. McClarney's remorse far exceeds that of a "typical" defendant charged with a domestic violence related crime.

The court based its finding of extreme remorse on its observations that McClarney was "apologetic and teary eyed" at trial, told the jury the victim was not at fault, sat in court with his head down and exhibited other body language that suggested remorse, and did not seek anything for himself. The court concluded that "where a defendant exhibits an extraordinary amount of remorse that exceeds that of the 'typical' defendant, the court can impose an exceptional sentence." Based on these findings, the trial court imposed an exceptional sentence.

 The sentencing court may impose an exceptional sentence only if it finds, considering the purposes of the Sentencing Reform Act of 1981 (SRA), substantial and compelling reasons to justify it.[2] We review the court's reasons for imposing an exceptional sentence under the "as a matter of law" standard.[3] The analysis includes examining whether the Legislature necessarily considered the mitigating factor in setting the standard range sentence

---

[2] RCW 9.94A.120(2); *State v. Perez*, 69 Wn. App. 133, 137, 847 P.2d 532, *review denied*, 122 Wn.2d 1015 (1993).

[3] *State v. Clemens*, 78 Wn. App. 458, 463, 898 P.2d 324 (1995). Under RCW 9.94A.210(4), this court may reverse an exceptional sentence only if the sentencing court's reasons are not supported by the record, the court's reasons do not justify the exceptional sentence, or the length of the sentence is clearly too excessive or lenient.

and whether the factor sufficiently distinguishes the defendant's crime from other such crimes.[4]

■ Remorse is not a statutory mitigating factor.[5] Washington courts have accepted aggravated or egregious lack of remorse as a basis for imposing an exceptional sentence above the standard range,[6] but have not addressed whether a defendant's demonstration of extreme remorse is a proper basis on which to depart downward from the standard range. We conclude that the trial court's use of extreme remorse as a mitigating factor was improper. Although we understand the trial court's desire to ameliorate the harshness of the SRA, the statute does not allow it for the reasons explained below.

First, using remorse as a mitigating factor would undermine the SRA's focus on meting out the appropriate punishment for a particular crime, rather than tailoring the sentence to a particular individual.[7] The presence of remorse does not distinguish one crime from another of similar character; rather it merely reflects a defendant's particular response *after* the crime. *State v. Ha'mim*[8] is instructive. In that case, the Supreme Court observed that, according to RCW 9.94A.340, " '[t]he sentencing guidelines . . . apply equally to offenders in all parts of the state, without discrimination as to any element that does not relate to the crime or the previous record of the defendant.' " Accordingly, the Court concluded that a defendant's age is not a substantial and compelling reason to impose an exceptional sentence because it "does not relate

---

[4] *Id.*

[5] *See* RCW 9.94A.390(1).

[6] *See, e.g., State v. Burkins,* 94 Wn. App. 677, 698, 973 P.2d 15, *review denied,* 138 Wn.2d 1014 (1999); *State v. Wood,* 57 Wn. App. 792, 800, 790 P.2d 220, *review denied,* 115 Wn.2d 1015 (1990).

[7] *See State v. Barnes,* 117 Wn.2d 701, 711, 818 P.2d 1088 (1991) ("In enacting the SRA, the Legislature changed our criminal sentencing system from an indeterminate, rehabilitation-oriented system to a determinate system, having punishment as its primary purpose.").

[8] 132 Wn.2d 834, 847, 940 P.2d 633 (1997).

to the crime or the previous record of the defendant."[9] The same reasoning applies to the defendant's demonstrated remorse well after he or she commits a crime.

In contrast, an egregious lack of remorse is a proper aggravating factor because it could relate back to the defendant's mental state during the crime by demonstrating the defendant's failure to understand the victim's suffering during the commission of the crime.[10] While there is initial appeal to McClarney's argument that it would be inconsistent to accept lack of remorse and disallow the presence of remorse as an acceptable basis for an exceptional sentence, we must reject this argument under the SRA because the former relates back to the crime and the latter does not. Lack of remorse may also be determined much more reliably than expressions of remorse. A defendant has no incentive to demonstrate lack of remorse, but defendants commonly express remorse at trial and sentencing because it may engage the sympathy of the court or the jury. Remorse may easily be feigned.

In this connection it is important to recognize that the Legislature has already approved a limited, objective manifestation of remorse as an acceptable ground for an exceptional sentence downward. RCW 9.94A.390(1)(b) allows a judge to impose an exceptional sentence downward if "[b]efore detection, the defendant compensated, or made a good faith effort to compensate, the victim of the criminal conduct for any damage or injury sustained."[11] In enacting this statutory ground for leniency, the Legislature distinguished between objective and subjective manifestations of remorse, and between attempts to compensate before and

---

[9] *Id.*

[10] We note *State v. McGee*, 347 N.W.2d 802, 806 n.1 (Minn. 1984), in which the Supreme Court of Minnesota commented that "there may be cases in which the defendant's lack of remorse could relate back and be considered as evidence bearing on a determination of the cruelty or seriousness of the conduct on which the conviction was based."

[11] As the State points out, McClarney could have offered Schwald first aid, paid for her emergency room bill, cleaned her apartment, or asked her if she was all right.

after the crime is detected. In doing so it undoubtedly recognized the dubious nature of remorse expressed subjectively only after the defendant is called to account for his or her actions. The Legislature has determined that certain evidence of remorse is reliable and included it in the SRA. We are not at liberty to disturb legislative decision.

We concur with the State's observation that remorse is particularly inappropriate as the basis for a downward departure in domestic violence cases because periods of great regret and attempts to reconcile routinely follow violent episodes in those relationships. We reject McClarney's claim that allowing trial courts to use extreme remorse as a basis for exceptional sentences downward would further the SRA's purposes. Most of the SRA purposes McClarney names, such as offering the offender an opportunity to improve himself or herself, would be advanced by a downward departure for any reason. And we fail to see how permitting remorse expressed after the crime as a mitigating factor would further the SRA's goal of protecting the public.

In sum, we reject extreme remorse as a substantial and compelling reason for an exceptional sentence and remand for sentencing within the standard range.[12]

A majority of the panel having concluded that the remainder of this opinion has no precedential value, it is ordered that only the foregoing will be published. The balance of the opinion will be filed for public record as provided in RCW 2.06.040.

BECKER and APPELWICK, JJ., concur.

Review denied st 146 Wn.2d 1002 (2002).

---

[12] Because we reject the trial court's reliance on remorse, we do not consider the State's argument that the court's finding of exceptional remorse is not supported by substantial evidence.