2016 JUL 11 AM 9:08

COURT OF APPEALS DIV 1
STATE OF WASHINGTON
FILED

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 73760-1-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| CLARENCE C. YOUNG, JR, | |
| Respondent. | FILED: July 11, 2016 |

APPELWICK, J. — Young pleaded guilty to 10 counts of securities fraud. His standard sentence range was 51 to 60 months of incarceration. The trial court sentenced Young to six months of work release and six months of home detention after he moved for an exceptional sentence. The trial court based Young's exceptional sentence on several mitigating factors including his medical condition, his age, his ability to make restitution payments, his criminal history, and the fact that the exceptional sentence would make frugal use of the State's resources. Because the Sentencing Reform Act of 1981[1] precludes consideration of these nonstatutory factors and because no statutory mitigating factors apply here, we reverse the trial court's exceptional downward sentence and remand for resentencing within the standard range.

---

[1] Chapter 9.94A RCW.

FACTS

Clarence Young worked as an accountant from 1974 to 1996 when his license was indefinitely suspended for failing to respond to a complaint by one of his clients. However, Young continued to operate a tax consulting business. In 2001, Young formed a limited liability company, Amigo Vino LLC, to supply wine grapes to hobbyists and small wineries.

In 2004 and 2005, Young began soliciting money from friends and tax clients to invest in one of two feeder funds he created—Cautious LLC and West Coast Financial LLC. Young used these two funds to pool investors' money and invest in a hedge fund—Directors Performance Fund LLC (DPF)—that had a minimum investment limit of $1 million. The Securities and Exchange Commission (SEC) determined that DPF was an illegal prime bank trading scheme and filed a civil action, eventually returning $6.7 million of DPF investment money to Cautious and West Coast. Young used most of that money to repay his investors, but used about $200,000 of it to fund Amigo Vino.

In 2006, Young solicited investments from 16 investors, ten of whom had invested in Cautious and West Coast, in order to invest in another feeder fund— Safeguard Capital, LLC. Young encouraged friends and clients to invest in Safeguard by telling them that their investments would earn a guaranteed return of between 18 and 24 percent with no risk. Young invested $1.6 million of the $2.2 million he raised for Safeguard in a hedge fund—Gemstar Capital Group, Inc. He used most of the remaining $600,000 to repay a line of credit for Amigo Vino. Between 2006 and 2008 Gemstar paid over $5 million in distributions to Safeguard,

a profit of $3.4 million. Instead of distributing this money to Safeguard investors, Young diverted $4.3 million to Amigo Vino's bank accounts and line of credit. Young did not tell investors that he had received the $5 million in distributions from Gemstar or that he had spent $4.3 million of that amount on his personal business.

The SEC then investigated and sued Gemstar for operating an illegal Ponzi scheme. In a deposition as a part of that investigation, Young testified that he was the sole investor in Safeguard and that he spent all of the profits to develop Amigo Vino and to invest in another failed hedge fund. Young continued to tell Safeguard investors that Safeguard was successful and failed to tell them about the SEC action against Gemstar.

In 2011, the Washington State Department of Financial Institutions (DFI) received an investor complaint regarding Young and launched an investigation. The securities division interviewed eight Safeguard investors and gathered records from various sources including the SEC, investors, and Young. In January 2013, the securities division entered charges against Young for selling unregistered securities, acting as an unregistered salesperson, acting as an unregistered investment advisor, and anti-fraud violations. In May 2013, the securities division entered into a consent order with Young, which required Young to cease and desist in engaging in investments on behalf of others. Between 2008—when the last of his solicited investors made an investment—and 2014, Young provided the investors with various excuses for nonpayment on their investments.

On June 16, 2014, Young was charged by information with many counts of securities fraud. On April 29, 2015, Young pleaded guilty to ten counts of securities

fraud. After pleading guilty, Young's standard sentence range—based on an offender score of nine and a seriousness level of three—was 51 to 60 months. For the purposes of sentencing, the parties agreed that the amount of restitution would be $1,264,802. Prior to sentencing, Young filed a motion in support of an exceptional sentence. He proposed a sentence of 12 months to be served on electronic home detention, to pay restitution, and to pay mandatory costs and fees.

After a sentencing hearing, the trial court adopted the findings of fact and conclusions of law as proposed by Young. The trial court concluded that multiple factors—standing alone or taken together—were sufficient to merit a departure from the sentencing guidelines. The trial court relied on the following factors: (1) Young suffers from several serious medical conditions that would make his incarceration particularly difficult, especially considering his age; (2) An exceptional sentence in this case would save the State from having to expend its limited resources on a large amount of medical expenses due to Young's multiple medical conditions that require ongoing treatment; (3) Young has the ability to continue working and make substantial restitution payments if electronic home monitoring is imposed. If he is incarcerated, he will be able to make only the most minimal payments toward restitution; (4) Young made some restitution payments to the victims in this case prior to his plea; (5) Young is remorseful and wants to repay the victims in the case in full; (6) Young is 69 years old and has no criminal history, Young has no arrest history or history of disruptive or unlawful behavior, the case did not involve any violence, and Young poses no threat to the community. Consequently, the trial court imposed an exceptional sentence of six

months on work release, six months on home detention, and payment of $1,264,802 in restitution.

The State appeals.

## DISCUSSION

Generally, under the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, a trial court must impose a sentence within the standard range. State v. Law, 154 Wn.2d 85, 94, 110 P.3d 717 (2005). The purpose of the SRA is to develop a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences. RCW 9.94A.010. It is also designed to:

> (1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;
>
> (2) Promote respect for the law by providing punishment which is just;
>
> (3) Be commensurate with the punishment imposed on others committing similar offenses;
>
> (4) Protect the public;
>
> (5) Offer the offender an opportunity to improve himself or herself;
>
> (6) Make frugal use of the state's and local governments' resources; and
>
> (7) Reduce the risk of reoffending by offenders in the community.

Id.

An appellate court analyzes the appropriateness of an exceptional sentence by answering the following three questions under the indicated standards of review:

> 1. Are the reasons given by the sentencing judge supported by evidence in the record? As to this, the standard of review is clearly erroneous.
>
> 2. Do the reasons justify a departure from the standard range? This question is reviewed de novo as a matter of law.
>
> 3. Is the sentence clearly too excessive or too lenient? The standard of review on this last question is abuse of discretion.

State v. Ha'mim, 132 Wn.2d 834, 840, 940 P.2d 633 (1997), overruled in part on other grounds by State v. O'Dell, 183 Wn.2d 680, 698-99, 358 P.3d 359 (2015). The SRA sets forth in RCW 9.94A.535 illustrative factors which the court may consider in exercising its discretion to impose an exceptional sentence. Law, 154 Wn.2d at 94. However, the statutory list is not exhaustive and the trial court may consider some nonstatutory mitigating factors under the SRA. See id.

I.    Statutory Mitigating Factor – Victim Compensation

Young responds to the State's appeal by asserting that a statutory mitigating factor—RCW 9.94A.535(1)(b)—applies. RCW 9.94A.535(1)(b) states, "Before detection, the defendant compensated, or made a good faith effort to compensate the victim of the criminal conduct for any damage or injury sustained." This statutory mitigating factor is designed to provide a ground for leniency based on a defendant's objective manifestation of remorse. See State v. McClarney, 107 Wn. App. 256, 264-65, 26 P.3d 1013 (2001).

The trial court did not specifically conclude that the elements of RCW 9.94A.535(1)(b) were satisfied.[2] The trial court found that Young made $523,456 in payments to the victims in the case prior to the date the information was filed. And, it concluded that Young made some restitution payments to the victims prior to his guilty plea. But, RCW 9.94A.535(1)(b) clearly requires that the defendant compensate the victims prior to detection. Neither the trial court's finding of fact nor its conclusion of law satisfy this requirement of the statute. The court's conclusion that Young made some restitution payments to the victims prior to his plea or its findings that he made payments to the victims in the case before the information was filed, does not establish that Young made an effort to compensate his victims before detection. Id.

Still, Young asserts that the facts considered by the trial court are consistent with the mitigating factor. At the sentencing hearing, Young's attorney stated that approximately half a million dollars was repaid to the victims prior to the information being filed. When asked by the court whether the payments were made when the investigation was brought to light, Young's attorney stated only that the payments were made prior to the information being filed. Young's attorney stated that he did not believe the State's criminal investigation had been initiated at the time, but that there was a prior DFI cease and desist order in place.

The trial court made no finding as to the date that Young's criminal conduct was detected. A range of dates are possibilities: the filing of criminal charges in

---

[2] Nor did it have occasion to do so. Young did not make this specific argument below to the trial court.

June 2014, the filing of the consent order by DFI in May 2013, entry of charges by DFI in January 2013, or any contact by investigators during DFI's investigation which began in 2011.

Moreover, the timing of the $523,456 in payments to the victims is not documented. One exception is the known repayment to Harold and Lisa Culverwell and Larry Stout of $24,944 in 2006 identified in the certification of probable cause. However, it is not clear if this amount was included in the final amount of $87,013 credited as a repayment to Culverwell and Stout. The other exception is the credited repayment of $90,000 paid to Debra Parsons to settle a lawsuit filed in 2011. Without dates, a court could not make the necessary finding that the payments to the victims were made before detection.

The evidence must also allow the trial court to conclude that any payments made before detection of the criminal activity were made for the purpose of compensating the victims for their injury. See RCW 9.94A.535(1)(b). Payments for any other purpose would not support a finding of an objective manifestation of remorse. See McClarney, 107 Wn. App. at 264-65.

The State agreed that the proper amount of restitution was $1,264,802 for the purposes of sentencing after reducing the restitution amount by $523,456 in repayments. The State's agreement as to the amount of restitution was not a concession or stipulation that the payments satisfied RCW 9.94A.535(1)(b)'s compensation requirement.

Young continued allaying victims' concerns about the safety of their investment after DFI began investigating him. As of the time of the filing of the

certificate of probable cause, victim Steven Kenney had not received any return on his investment. Young told victim Steven Kenney in 2013 that Kenney would receive his money by Christmas. And, when Kenney confronted Young about the DFI investigation, Young denied the merit of the investigation. Additionally, Young told victim Elworth Stegriy in 2014 that his funds were being held up at a bank in New York. And, he told victim John Jackson just months before the filing of the certificate of probable cause that his money was held up in a lawsuit "back east." Nothing about Young's conduct evidences an effort to acknowledge his wrongdoing, cease his illegal conduct, or compensate victims for their injury.

Young was also credited with $90,000 in repayments made to Parsons. This $90,000 represented money Young was compelled to pay to Parsons as a result of a settlement in a civil lawsuit filed against him—not a voluntary payment made out of remorse. And, at the time of the certification of probable cause, Young was credited with making $24,944 in repayments to Culverwell and Stout in 2006. But, Young told Culverwell and Stout that the $24,944 constituted two distributions of profits from their investment. And, after receiving these payments, Culverwell and Stout actually decided to invest more money in Safeguard. There is no evidence in the record that the payments made to Culverwell and Stout were intended to compensate them for injury rather than perpetuate Young's scheme.

Young had a business relationship with his victims. The payments totaling $523,456 could have represented routine return of principal or payment of earnings. They could have been churning of funds to induce investors to perpetuate their investments. They could have been to repay injury from criminal

conduct. The purpose of the individual payments is not documented in the record. There is no evidence in the record that Young voluntarily acknowledged his wrongdoing to any victim at the time of the payments nor that he communicated that the payments were being made to compensate them for injury or harm. The record does not support a reasonable inference that the payments represented an objective manifestation of remorse, let alone a finding of fact that these "known repayments" were payments made by Young as an acknowledgement of wrongdoing or as voluntary compensation to these victims for damage or injury sustained. See RCW 9.94A.535(1)(b).

We conclude that the trial court did not make the findings and conclusions regarding Young's payments to his victims necessary to satisfy the statutory mitigating factor in RCW 9.94A.535(1)(b).[3] And, on the record before it, the trial court could not have done so.

## II. Non-Statutory Mitigating Factors

The trial court relied on Young's age, health issues, remorse, lack of criminal history, and willingness or ability to repay his victims to support an exceptional sentence below the standard sentence range. The State argues that these factors were either considered by the legislature in establishing the standard

---

[3] We note that to the extent a defendant seeks to claim a mitigating factor based on compensating victims prior to entry of a judgment, he or she must satisfy the statutory requirements of RCW 9.94A.535(1)(b) as outlined by the legislature. Thus, even if there was sufficient evidence that Young made payments prior to the filing of the information or the guilty plea, he may not assert that these reasons constitute an independent, nonstatutory mitigating factor.

10

sentence range or were factors of a personal nature that do not constitute legally sufficient nonstatutory mitigating factors supporting an exceptional sentence.

This court reviews the trial court's stated justifications for departing from the standard sentencing range de novo. Law, 154 Wn.2d at 99-100. In determining whether a factor legally supports departure from the standard sentence range, courts employ a two-part test. Ha'mim, 132 Wn.2d at 840. First, a trial court may not base an exceptional sentence on factors necessarily considered by the legislature in establishing the standard sentence range. Id. Second, the asserted mitigating factor must be sufficiently substantial and compelling to distinguish the crime in question from others in the same category. Id. To support an exceptional sentence a factor must relate to the crime and make it less egregious. State v. Fowler, 145 Wn.2d 400, 404, 38 P.3d 335 (2002).

A. Factors Considered by the Legislature

Under the first prong of the two-part test, Washington courts have consistently held that the purposes of the SRA, as stated in RCW 9.94A.010, are insufficient factors to justify a departure from the guidelines. Law, 154 Wn.2d at 96-97. Courts have reasoned that the SRA's stated purposes standing alone would not justify an exceptional sentence as the presumptive sentence ranges established for each crime represent the legislative judgment as to how the interests should best be accommodated. Id. at 96.

Here, the trial court reasoned that Young's exceptional sentence was justified, because an exceptional sentence in this case would save the State from having to expend its limited resources on a large amount of medical expenses due

11

to Young's multiple conditions that require ongoing treatment. As noted above, one of the stated purposes in RCW 9.94A.010 is to make frugal use of the state's and local governments' resources. RCW 9.94A.010(6). And, in State v. Pascal, the court specifically held that making frugal use of the State's resources was an inadequate justification for an exceptional sentence, because the SRA was specifically designed to promote this goal.[4] 108 Wn.2d 125, 137-38, 736 P.2d 1065 (1987). We conclude that the trial court erred to the extent it based Young's exceptional sentence on this factor.

Additionally, the trial court reasoned that Young has no criminal history, the case did not involve violence, and Young poses no threat to the community. These are factors specifically enumerated in RCW 9.94A.010. See RCW 9.94A.010(1),(4). And, consideration of the defendant's lack of criminal history and the defendant's low threat to the public were also explicitly rejected by the court in Pascal. 108 Wn.2d at 137-38. Similarly, in Fowler, 145 Wn.2d at 409, the court rejected the trial court's consideration of the defendant's risk to reoffend because protection of the public had already been considered by the legislature in computing the presumptive standard range. We conclude that the trial court erred when it considered these factors.

---

[4] Young notes that between 2012 and 2014, Washington courts have on 31 occasions imposed exceptional sentences in order to make frugal use of the State's resources. He cites to tables in the record that are purportedly generated from Washington sentencing records. Whether the trial courts erred in imposing an exceptional sentence on this basis in those unrelated cases is not at issue here.

## B. Factors of a Personal Nature

Under the second prong of the test, the mitigating factor must relate to the crime and distinguish the crime in question from others in the same category. Law, 154 Wn.2d at 97, 98. This second prong encapsulates the SRA's explicit command that sentences be applied equally to all offenders without discrimination as to any element that does not relate to the crime or the previous record of the defendant. Id. at 97; RCW 9.94A.340. Washington courts have applied RCW 9.94A.340 to prohibit exceptional sentences based on factors personal in nature to a particular defendant. Law, 154 Wn.2d at 97.

Here, the mitigating factors cited by the trial court were all personal in nature and fail to distinguish the crime in question from others in the same category. Young's age of 69 at the time of sentencing is a personal factor.[5] See Ha'mim, 132 Wn.2d at 847. Extreme remorse expressed by the defendant[6] does not relate to the crime. See McClarney, 107 Wn. App. at 263-64. Young's ability to pay

---

[5] Young asserts that it was appropriate for the trial court to consider his age. He cites to State v. Ronquillo, 190 Wn. App. 779, 768-69, 783, 361 P.3d 779 (2015), O'Dell, 183 Wn.2d at 698-99, and the United States Supreme Court's decision in Miller v. Alabama, 567 U.S.__, 132 S. Ct. 2455, 2471, 183 L. Ed .2d 407 (2012), to support his assertion that age is relevant to the exceptional sentence determination. But, these cases stand for the proposition that youthfulness in particular, as opposed to age in general or older age, may be considered as an appropriate mitigating circumstance. Key to the reasoning in Ronquillo and O'Dell was the fact that scientific developments indicated that adolescents' cognitive and emotional development may relate to a defendant's crime. O'Dell, 183 Wn.2d at 696-97, 698-99; Ronquillo, 190 Wn. App. at 768-69. Notably, the O'Dell Court's holding was explicitly limited to youth. 183 Wn.2d at 696 (stating that youth can amount to a substantial and compelling factor justifying a sentence below the standard range).

[6] At the sentencing hearing, Young stated that he had deep regret for his actions and that he sought to take full responsibility for his actions.

restitution if not incarcerated is a factor personal in nature.[7] See Law, 154 Wn.2d at 104. As such, none of these factors were sufficiently substantial and compelling to justify an exceptional sentence. See Id.

No statutory mitigating factor is satisfied. No nonstatutory factors justify an exceptional sentence. The trial court erred when it imposed an exceptional sentence downward. As a general rule, if the appellate court determines that all of the factors relied on by the trial court are insufficient to justify an exceptional sentence, the court will remand for resentencing within the standard range. See Ha'mim, 132 Wn.2d at 847.

We reverse and remand for resentencing within the standard range.

_Appelwick, J._

WE CONCUR:

_Trickey, A.C.J._                    _Cox, J._

---

[7] The Law court explicitly held that a defendant's inability to pay restitution while incarcerated is a factor personal in nature. 154 Wn.2d at 104. Young argues that because Law preceded the U.S. Supreme Court's decision in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), Booker should control. He notes that the Booker court held that mandatory federal sentencing guidelines violated the Sixth Amendment. And, he argues that relevant to this case, the Booker court held that sentencing judges should consider a number of factors including the characteristics of the defendant. But, even if the principles in Booker can be analogized to Washington's sentencing scheme, Booker stands for the proposition that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be admitted by the defendant or submitted to a jury and proved beyond a reasonable doubt. Id. at 244. In other words, it considers the appropriate procedures for imposing an upward exceptional sentence. Nothing in Booker supplants Law or distinguishes it from Young's case.