IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>    Appellant,<br><br>    v.<br><br>SONYA JEAN PRENGUBER,<br><br>    Respondent. | No. 88255-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — The State of Washington appeals from the judgment and sentence entered following Sonya Prenguber's guilty plea to one count of vehicular assault while under the influence of alcohol. The State asserts that the sentencing court erred when it imposed both an exceptional sentence below the standard sentencing range and a term of community restitution as a condition of her community custody. The State waived its right to challenge the court's imposition of community restitution, but we reach the merits of its other challenge and agree that the sentencing court did not rely on any *valid* nonstatutory mitigating factors when it imposed the exceptional sentence. Accordingly, we reverse and remand this matter for resentencing consistent with this opinion.

FACTS

On a mid-afternoon in May 2022, Brandon Robb, a Snohomish County public works employee, was riding on a platform in the back of a yellow government-owned pick-up truck as part of his work gathering construction cones

from the roadway. The truck signaled a left turn across incoming traffic and, as it was crossing the incoming lane and completing its turn, a vehicle rapidly approaching from behind rammed into the truck's rear platform. The collision ejected Robb from the truck and propelled him airborne. He crashed into the nearby ditch and long grass. He was transported to the hospital where he was diagnosed with two lung contusions and two nondisplaced rib fractures. The driver of the vehicle that caused the collision was Sonya Prenguber, who was under the influence of alcohol at the time.[1]

Over two years later, on November 21, 2024, the State charged Prenguber with one count of vehicular assault while under the influence of alcohol, a crime designated as both a most serious offense and violent offense.[2] She later entered a guilty plea to the offense as charged and proceeded to sentencing in the same hearing. The State represented to the sentencing court, and Prenguber did not dispute, that based on an offender score of zero, Prenguber's standard range sentence was three to nine months of incarceration.

Prenguber's sentencing memorandum sought an exceptional sentence below the standard range (exceptional down) of one month of confinement. Prenguber argued that this was warranted "in recognition of all she ha[d] done to tackle her alcoholism and improve her life following the events of this case," including her work to become sober shortly after the incident and maintenance of two years of sobriety since then, her ability to obtain and hold a job for the last two

---

[1] Among several other indicia that Prenguber was under the influence of alcohol at the time, and her own admissions at the scene, later analysis of her bloodwork determined that her blood alcohol concentration was 0.27, significantly above the legal limit of 0.08.

[2] *See* RCW 9.94A.030(32)(p), (58)(a)(xiii).

years, and the fact that she took responsibility for her actions and entered into a guilty plea in a "relatively quick fashion."

The sentencing court then heard from the parties. The State recommended a low-end sentence of three months of incarceration and then invited Robb to speak. Robb told the court that his life has been altered in multiple ways since the incident, including that he had been unable to help his wife move into their first house, needed "to be conscious about any activity that [he was] doing," and had difficulty carrying his 11-month-old child. Regarding Prenguber's sentence, he told the court, "I feel like the sentencing should be strict and set a precedence that her actions were highly illegal and that a life lesson will be learned and hopefully save others from a similar fate or even worse."

Prenguber maintained her request for an exceptional down of one month in jail and argued that her only prior criminal history was a misdemeanor from 2014 when she was experiencing domestic violence, poverty, and homelessness, her offender score of zero, and the fact that she had never previously been confined all warranted such.[3] She also argued that according to her employer, she would be able to keep her current job if she were only incarcerated for a term of 30 days but would likely lose her employment if she was absent from work longer than that. Prenguber exercised her right to allocution at sentencing and two other individuals and her employer[4] also spoke on her behalf. Prenguber indicated her willingness

---

[3] The parties agreed that Prenguber had a prior misdemeanor conviction that was statutorily excluded from her offender score and that she had not been incarcerated as a result of that prior conviction.

[4] Her employer stated,

I know if she goes for 90 days, I'm going to have to take her out of the system. We're going to have to rehire her, which I'll rehire her. I just don't know if she's going to pass the background check with this on her record. I know for 30 days, I

to remand herself to the State's custody immediately following the hearing and serve the term of confinement imposed by the court.

The court granted Prenguber's request over the State's objection and imposed a term of confinement of 30 days followed by 12 months of community custody. The court also imposed 60 hours of community restitution to be completed within 12 months at a nonprofit organization. The State did not object to the imposition of community restitution and expressly requested that the condition be subject to supervision by the Department of Corrections (DOC). The parties also agreed that the written findings of fact and conclusions of law (FFCL) in support of the court's exceptional sentence would be entered at a later date.

The agreed FFCL were entered on May 2, 2025 and stated as follows:

I. Findings of Fact
The [c]ourt considered defendant's lack of scoreable or recent history, the fact that the defendant didn't serve any previous period of confinement, and the defendant's rehabilitative efforts, employment, and support from friends, family, and her employer.
II. Conclusions of Law
The [c]ourt finds that it is in the interests of justice to impose an exceptional sentence below the standard []range. The defendant's ability to remain employed following a 1 month prison sentence, as well as her success in addressing her substance use disorder, make it so that an exceptional sentence below the standard range is appropriate, as it presents a high likelihood of remaining clean and crime free. The exceptional sentence also requires Ms. Prenguber to take action to help her community through her community service requirements, rather than simply serving a passive period of incarceration.[5]

---

can keep her in the schedule. And I won't take her out. So she can have her job when she comes back. I just can't guarantee anything past the 30 days.

[5] During oral argument before this court, appellate counsel for Prenguber indicated that the evidence before the court regarding Prenguber's sobriety and her efforts to maintain her sobriety solely consisted of her own statements, the statements of her friends and family, and representations to the court by her trial counsel. Wash. Ct. of Appeals oral arg., *State v. Prenguber*, No. 88255-4-I (May 28, 2026), at 12 min., 14 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2026051150. Counsel also acknowledged that no evidence of any substance use evaluation, treatment, or compliance

(Boldface omitted.)  The State timely appealed.[6]

ANALYSIS

The State presents challenges to the imposition of an exceptional down and a term of community restitution.  The State is correct as to its first assertion but has waived the second.

I.      Consideration of Nonstatutory Mitigating Factors for Exceptional Down

The State first contends that the sentencing court did not rely on any valid nonstatutory mitigating sentencing factors when it imposed an exceptional down against Prenguber.  We agree.[7]

A.      Exceptional Sentences under SRA and *Grewe* Test

Our Supreme Court recently described the general structure of the Sentencing Reform Act of 1981 (SRA)[8] as follows:

> The SRA determines sentence length for most felony criminal offenses in Washington.  The SRA "structures, but does not eliminate, discretionary decisions affecting sentences."  RCW 9.94A.010.  It does so by providing a grid, based on the seriousness of the crime and the offender's criminal history, to calculate the standard sentencing range.  RCW 9.94A.510, .517, .515.  The sentencing court must impose a sentence within that range, unless

---

reports supporting Prenguber's efforts and sobriety was presented to the sentencing court.  *Id.* at 12 min., 47 sec.

[6] According to the parties' representations to this court, following the initiation of the State's appeal and during its pendency, Prenguber completed a term of confinement of one month.  Pursuant to RCW 9.94A.505(6) and *In re Personal Restraint of Costello*, 131 Wn. App. 828, 832, 129 P.3d 827 (2006), she is entitled to credit for time served after resentencing, in addition to any earned good time credit pursuant to RCW 9.94A.728.

[7] Washington appellate courts review de novo whether the reasons supplied by the sentencing court justify a departure from the standard sentencing range.  *State v. Law*, 154 Wn.2d 85, 93-94, 110 P.3d 717 (2005).  The parties here do not dispute whether the facts underlying the court's determination are supported by the record or whether the sentence imposed was clearly too lenient and we, therefore, do not consider these issues.  *See id.* at 93; RCW 9.94A.585(4).

[8] Ch. 9.94A RCW.

> it finds a mitigating or aggravating factor that provides a "substantial and compelling reason[]" to depart from that range and impose an "exceptional sentence," instead. RCW 9.94A.535.
>
> The SRA provides a nonexclusive list of mitigating circumstances that can support an exceptional sentence below the range. RCW 9.94A.535(1). . . . [T]he SRA states that its list of mitigating factors is "illustrative only and [the listed factors] are not intended to be exclusive reasons for exceptional sentences." *Id.*

*State v. Thomason*, 199 Wn.2d 780, 787-88, 512 P.3d 882 (2022) (alterations in original) (footnote omitted).

When a sentencing court imposes an exceptional sentence with reliance on a factor not set forth in the SRA, appellate courts use the two-part test announced in *State v. Grewe*,[9] in order to determine whether the sentencing court's reliance on that proposed nonstatutory factor would support an exceptional sentence in any case. *Thomason*, 199 Wn.2d at 789. Our Supreme Court explained,

> Under [the *Grewe*] test, (1) the factor cannot support an exceptional sentence if the legislature *necessarily* considered that factor when it established the standard range and (2) the factor cannot support an exceptional sentence unless it is substantial and compelling enough to distinguish the crime in question from others in the same category.

*Id.* Given the matter before us, Washington decisional authority discussing each part of *Grewe* test is instructive.

### 1. First Part of *Grewe* Test

As pertinent here, our Supreme Court has considered and rejected several proposed factors relied on by sentencing courts pursuant to the first part of the *Grewe* test. For instance, the court has noted that the purposes of the SRA[10]

---

[9] 117 Wn.2d 211, 215-16, 813 P.2d 1238 (1991).
[10] RCW 9.94A.010 sets forth the purposes of the SRA and reads as follows:
> The purpose of this chapter is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony

cannot be a factor used to support the imposition of an exceptional down. *See State v. Pascal*, 108 Wn.2d 125, 137, 736 P.2d 1065 (1987).[11] This is because "the purposes of the SRA were factors necessarily considered by the legislature in establishing the standard sentence range." *State v. Law*, 154 Wn.2d 85, 95, 110 P.3d 717 (2005).

The court has also held that because a "defendant's criminal history[] is one of the components used to compute the presumptive range for an offense" under the SRA, "criminal history may not be counted again as a mitigating circumstance to justify departure from the range." *Pascal*, 108 Wn.2d at 137. Indeed, as the court later explained,

> [s]aying that the defendant had no history of violent behavior and no pertinent criminal history is essentially equivalent to saying that he has no criminal record. As we have noted, a lack of a criminal history is not a mitigating factor because criminal history is already encompassed in the sentencing guidelines. *See State v. Pascal,* 108 Wn.2d 125, 736 P.2d 1065 (1987) (lack of criminal history already accounted for in standard range). The only exception to this general rule is that a lack of criminal history may be considered "in combination with the finding that the defendant was 'induced' to commit the crime" or lacked a predisposition to commit the crime. *State v. Ha'mim,* 132 Wn.2d 834, 842-43, 940 P.2d 633 (1997)[, *abrogated on other grounds by State v. O'Dell*, 183 Wn.2d 680, 358 P.3d 359 (2015)]; *see State v. Nelson,* 108 Wn.2d 491, 740 P.2d 835 (1987); *State v. Baucham,* 76 Wn. App. 749, 887 P.2d 909 (1995).

---

offenders which structures, but does not eliminate, discretionary decisions affecting sentences, and to:

(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;

(2) Promote respect for the law by providing punishment which is just;

(3) Be commensurate with the punishment imposed on others committing similar offenses;

(4) Protect the public;

(5) Offer the offender an opportunity to improve [themselves];

(6) Make frugal use of the state's and local governments' resources; and

(7) Reduce the risk of reoffending by offenders in the community.

[11] It bears stating, however, "[o]nce a valid mitigating factor is identified by the trial court, the purposes section of RCW 9.94A.010 may properly be considered by the court in fashioning an appropriate sentence." *State v. Alexander*, 125 Wn.2d 717, 730, 888 P.2d 1169 (1995).

*State v. Fowler*, 145 Wn.2d 400, 406-07, 38 P.3d 335 (2002) (footnote omitted).

##### 2. Second Part of *Grewe* Test

As a general matter, for the second part of the *Grewe* test, our Supreme Court has emphasized that nonstatutory factors offered in support of imposing an exceptional sentence must

> relate to the crime, the defendant's culpability for the crime, or the past criminal record of the defendant. Factors which are personal and unique to the particular defendant, but unrelated to the crime, are not relevant under the SRA.

*Law*, 154 Wn.2d at 89; *see also* RCW 9.94A.340 ("The sentencing guidelines . . . apply equally to offenders in all parts of the state, without discrimination as to any element that does not relate to the crime or the previous record of the defendant.").

As pertinent here, we have recognized that "the presence of remorse does not distinguish one crime from another of similar character; rather it merely reflects a defendant's particular response *after* the crime." *State v. McClarney*, 107 Wn. App. 256, 263, 26 P.3d 1013 (2001).[12] Similarly, "[a] defendant's good conduct following the commission of a crime is not a factor which relates to the crime itself

---

[12] Prenguber also contends that her admission of her guilt prior to the State's filing of the charges against her should be considered as a mitigating expression of remorse under the SRA. She is mistaken. We have stated,

> [I]t is important to recognize that the Legislature has already approved a limited, objective manifestation of remorse as an acceptable ground for an exceptional sentence downward. RCW 9.94A.390(1)(b) allows a judge to impose an exceptional sentence downward if "[b]efore detection, the defendant compensated, or made a good faith effort to compensate, the victim of the criminal conduct for any damage or injury sustained."

*McClarney*, 107 Wn. App. at 264.

Prenguber does not present persuasive argument or authority in support of the proposition that remorse expressed after the crime has been committed and the injury has been sustained, but before prosecution commenced, constitutes a valid factor on which a sentencing court may rely to impose an exceptional sentence. Thus, her contention fails.

or the defendant's criminal record," *State v. Roberts*, 77 Wn. App. 678, 685, 894 P.2d 1340 (1995), and "[n]either addictions nor other personal circumstances of defendants have been found to support exceptional sentences downward." *State v. Murray*, 128 Wn. App. 718, 725, 116 P.3d 1072 (2005); *see also, e.g.*, *Law*, 154 Wn.2d at 104 ("[T]he mitigating factors cited, specifically, Law's progress in relating to her children . . . [and] Law's progress in her 12-step program . . . were personal in nature, and failed to 'distinguish the crime in question from others in the same category.'" (quoting *Ha'mim*, 132 Wn.2d at 840)); *State v. Hobbs*, 60 Wn. App. 19, 24, 801 P.2d 1028 (1990) (holding that existence of harmonious domestic relationship between perpetrator and victim in kidnapping crime at time of sentencing was not a mitigating factor justifying exceptional down).[13]

Additionally, Washington decisional authority has repeatedly rejected a sentencing court's imposition of an exceptional down when the court did so in reliance on a potential consequence that a standard range term of confinement would have on the defendant before it. *See, e.g.*, *State v. Allert*, 117 Wn.2d 156, 168-69, 815 P.2d 752 (1991) (rejecting sentencing court's reliance on finding "that the defendant could remain employed while on work release"); *State v. Estrella*, 115 Wn.2d 350, 359, 798 P.2d 289 (1990) (holding that defendant's "trouble finding a job after leaving prison" did not meaningfully distinguish his commission of burglary in the second degree); *State v. Amo*, 76 Wn. App. 129, 133-34, 882 P.2d

---

[13] Pursuant to GR 14.1(a), we note that this same panel of judges in the decision of *State v. Kuit* followed the foregoing decisional authority in holding that the factors proposed by the defendant therein, his age and illness, were personal, did not differentiate the crime in question, and were, therefore, not crime-related. No. 83366-9-I, slip op at 6 (Wash. Ct. App. Jan. 30, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/833669.pdf.

1188 (1994) (holding possibility that parental rights to newborn son might be terminated if defendant received standard-range sentence did not distinguish defendant's offense from similar offenses). Finally, our Supreme Court has held that "the fact of family support does not relate to the crime committed by the defendant and, therefore, does not distinguish the crime from other crimes of the same statutory category." *Fowler*, 145 Wn.2d at 411.

### B. Factors Presented in Support of Exceptional Down

Here, the mitigation information provided by Prenguber in seeking an exceptional down included the following key points: Prenguber's efforts after her arrest to take responsibility for and address the underlying causes of her conduct, her acceptance of responsibility through her guilty plea, and the role of her employment in her sobriety and the impact extended incarceration would have on both. She also emphasized her support from family, friends, and her employer in terms of maintaining her sobriety.

The report of proceedings from the plea and sentencing hearing, along with the agreed FFCL, establish that after consideration of the information presented by the parties, including evidence of Prenguber's employment and support from her community, the court rested its decision primarily on the severity of the crime of conviction, a sentence that would have "the highest likelihood of impact going forward" with an eye toward Prenguber's employment and sobriety, her "lack of scoreable or recent history," and the fact that she had not ever "serve[d] any previous period of confinement."

None of the factors rested on by the sentencing court satisfy both parts of the *Grewe* test. The legislature has already accounted for the severity of a charged offense and a defendant's criminal history as part of establishing the standard ranges set forth in the SRA; that Prenguber had no significant criminal history was irrelevant to whether a mitigating sentence should be imposed. Additionally, with the exception of the compensatory efforts set forth in RCW 9.94A.535(1)(b),[14] Washington appellate courts have recognized that a defendant's positive steps taken *after* the commission of a crime are not a factor that relates to the crime itself and do not distinguish a defendant's commission of the crime in question from others who are similarly situated; that Prenguber worked to become sober shortly after she committed vehicular assault and maintained her sobriety over the intervening years between the incident and the State's filing of the criminal charge, though laudable, are personal in nature, do not relate to her crime of commission, and do not distinguish her commission thereof from others. [15]

Relatedly, the trial court's reliance on the collateral consequences of confinement on her position of employment was erroneous; that Prenguber would not lose her employment if she were sentenced to only 30 days of incarceration

---

[14] RCW 9.94A.535(1)(b) provides the following mitigating circumstance: "Before detection, the defendant compensated, or made a good faith effort to compensate, the victim of the criminal conduct for any damage or injury sustained."

[15] At oral argument in this matter, both parties addressed rehabilitation, the SRA, and whether the court could rely on Prenguber's rehabilitative efforts in imposing sentence. Wash. Ct. oral arg., *supra,* at 5 min., 48 sec.; 19 min., 39 sec. To be clear, as emphasized by our Supreme Court,

> Though a sentence imposed pursuant to the SRA might present a felony defendant
> with the opportunity to improve [themselves], rehabilitation is *not* a justification for
> sentencing under the SRA. *State v. Barnes,* 117 Wn.2d 701, 711, 818 P.2d 1088
> (1991); *see also* RCW 9.94A.010 (purposes of the SRA).

*Harris v. Charles*, 171 Wn.2d 455, 465, 256 P.3d 328 (2011) (emphasis added); *see also State v. Kim*, 7 Wn. App. 2d 839, 846, 436 P.3d 425 (2019); *State v. McClarney*, 107 Wn. App. 256, 263 n.7, 26 P.3d 1013 (2001).

and would lose as much if she were sentenced to a term of confinement within the standard range does not differentiate her commission of vehicular assault from other similar offenses.[16] Finally, as in *Fowler,* the fact that Prenguber had support from her friends and family "does not relate to the crime committed by the defendant and, therefore, does not distinguish the crime from other crimes of the same statutory category." 145 Wn.2d at 411.

Accordingly, the sentencing court did not rely on any *valid* nonstatutory mitigating factors[17] and therefore erred when it imposed the exceptional down in this matter.

## II. Imposition of Community Restitution as Condition of Sentence

The State next contends that the sentencing court erred when it imposed a term of community restitution against Prenguber. However, the record establishes that this challenge is waived.

---

[16] In imposing an exceptional down, the court may have also relied on such a sentence creating a high likelihood of Prenguber staying "clean and crime free." However, a "sentencing court's determination that a standard range term would not advance rehabilitative goals or would not protect the public is not adequate to justify departure from the normal sentence range." *State v. Gaines*, 122 Wn.2d 502, 513, 859 P.2d 36 (1993).

[17] Prenguber nonetheless relies on a pair of resentencing cases that involved standard range sentences or prior youth sentencing in an attempt to support the court's imposition of a exceptional down herein. *See State v. Delbosque*, 195 Wn.2d 106, 121-122, 456 P.3d 806 (2020); *State v. Dunbar*, 27 Wn. App. 2d 238, 247-48, 532 P.3d 652 (2023). Her reliance is unavailing. Those cases regard challenges to resentencing decisions that imposed a term of confinement either within the standard range or made in the context of youth life-without-parole resentencing pursuant to the *Miller*-fix statute. *See Miller v. Alabama,* 567 U.S. 460 (2012); RCW 10.95.030, .035. Prenguber does not present persuasive analysis supporting how such authority meaningfully relates to the matter before us.

We also note that in presenting the law that she seeks to apply to the matter before us, Prenguber's appellate briefing cites to a concurring opinion and several dissenting opinions found in many of the lead decisional authorities in this area of law. However, she does not present any argument, analysis, or authority in support of establishing that the lead decision issued in each of the cases no longer constitutes good law nor does she present authority that supports the contention that this intermediate Court of Appeals has the authority to depart from such binding precedent. *See State v. Winborne*, 4 Wn. App. 2d 147, 175, 420 P.3d 707 (2018). Thus, her reliance on such decisions is unavailing.

As an initial matter, the State asserts in briefing that the sentencing court improperly imposed the 60-day-term of community restitution as an alternative to incarceration. The State's characterization is plainly belied by the report of proceedings. The sentencing court sua sponte decided to impose this additional condition *after* hearing the parties' sentencing recommendations and *after* imposing the term of confinement. Nothing in the record before us suggests that the term of community restitution was imposed as an alternative to incarceration, so that contention is meritless.

As to the broader question of the propriety of community restitution as a separate condition of sentence, critically, neither party objected nor sought clarification before the court moved on to its consideration of legal financial obligations. The State nevertheless endeavors to assign error to the imposition of the foregoing sentencing term. However, failure to object to an issue at trial generally waives appellate review of that issue. *See State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). Here, the State not only failed to object, but the deputy prosecuting attorney also argued for formal supervision to monitor Prenguber's compliance with this condition. When the parties were discussing the written findings toward the end of the sentencing hearing, the court expressly sought input from them with regard to the community restitution condition, and the following exchange with the State occurred:

> THE COURT: I lack a little bit of information as to what's out there. Do either of you know or have any recommendations *or requests* as to that?
> [DEPUTY PROSECUTOR]: I feel like the [D]epartment [of Corrections]—at least in theory, they should monitor that.

(Emphasis added.) The record plainly establishes that the State not only failed to object to this condition at the time it was imposed, but also affirmatively requested DOC supervision. The State has, therefore, waived any challenge on this issue.[18]

Reversed and remanded for resentencing.

WE CONCUR:

---

[18] The State also fails to present any analysis pursuant to RAP 2.5(a)(3) in its brief in support of establishing an entitlement to our consideration of this issue for the first time on appeal. Therefore, for this reason as well, we decline to consider the State's contention. *See State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007); *State v. McFarland*, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995).